Lonnie David **WILLIAMS**, Appellant (Defendant below),

v.

**STATE of Indiana,** Appellee (Plaintiff below).

No. 778S138.

Supreme Court of Indiana.

March 7, 1979.

James A. Greco, Greco, Gouveia, Miller & Pera, Gary, for appellant.

Theo. L. Sendak, Atty. Gen., Robert J. Black, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was originally charged on March 3, 1971, with two counts of first degree murder, Ind.Code § 35–13–4–1 (Burns 1975), in the shooting deaths of two police officers. He entered a plea of guilty to each count and was sentenced to two (2) terms of life imprisonment. He filed a petition for post conviction relief which was subsequently denied by the trial court, but upon appeal from the denial of his petition, the judgment of the trial court was reversed, and the defendant was permitted to withdraw his guilty pleas and plead anew. *Williams v. State*, (1977) Ind., 363 N.E.2d 971. On retrial by jury, the defendant was found guilty and sentenced to two (2) terms of life imprisonment. On appeal, he asserts the following as error:

(1) The denial of his motion for a change of venue.

(2) The denial of his motion to suppress a pretrial statement, and its subsequent admission at trial.

(3) The admission of testimony concerning other crimes alleged to have been committed by the defendant, but for which he had not been charged.

\* \* \* \* \* \*

## ISSUE I

On November 21, 1977, the defendant filed a motion for change of venue upon the

grounds that there had been and would continue to be prejudicial pretrial publicity. At a hearing held on the motion, the court reserved ruling on the motion until jury selection had begun, so as to determine whether any of the prospective jurors had read any articles concerning the case and whether the articles themselves were prejudicial.

During voir dire, several prospective jurors indicated that they had some knowledge of the case, both from prior interest as well as from information obtained from newspaper articles. They also indicated that there had been some discussion of the case among the prospective jurors concerning the fact that the defendant was to be retried. On appeal the defendant contends that the trial court erred in denying his motion for change of venue in view of, six of the jurors finally selected having indicated that they had some knowledge of the case through pretrial publicity. In particular, he points to a statement made by one such juror during voir dire:

"Q. Mr. Victor, do you, sir, please accept this for what I mean. I am not trying to be funny or anything. Do you feel that you really could put this article out of your mind in all honesty, completely out of your mind, would that be possible?

"A. Completely, no."

However, further on in the questioning the juror stated:

"Q. If you hear certain things during the trial that coincide with what was told to you by your wife, would that begin then to indicate to you that the article might have been fairly accurate?

"A. No, because what she told me was so vague, it would be hard to draw pictures in the first place.

 * * * * * *

"Q. You feel, sir, that you in spite of the fact that certain things about the article may come back to you, you would be successful in rendering a verdict in spite of that, based only on the evidence even if things came back from what your wife told you?

"A. Yes, I do."

The defendant did not introduce at the hearing or include in the record, the newsclippings which formed the basis of his motion. However, from the jurors' responses during voir dire, it appears that the stories consisted of factual accounts of the proceedings and other matters of public record. There is no indication that any of the articles exhibited a "pattern of deep and bitter prejudice" throughout the community as found in *Irvin v. Dowd*, (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, a case upon which the defendant relies as authority for his position.

 It is not a prerequisite to a fair trial that the jurors be totally ignorant of the facts involved. The standard to be applied is whether or not "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.*, at 723, 81 S.Ct. 1639, 6 L.Ed.2d 751. Each of the jurors indicated that he could lay aside his opinion and impartially serve, and, as the defendant has failed to establish that there was a general atmosphere of prejudice throughout the community, there is no reason to believe that he was denied his right to a fair and impartial jury.

It was within the discretion of the trial court to determine whether to grant the defendant's motion, and from the circumstances involved, we find no abuse of that discretion. *Mendez v. State*, (1977) Ind., 370 N.E.2d 323.

## ISSUE II

Prior to the start of trial the defendant filed a motion to suppress and reject his pretrial statement, which motion was denied by the trial court. At the hearing held on the motion, the defendant testified that at the time he made the statement he was under the influence of drugs and alcohol which he had ingested in the early morning hours prior to the shooting. Further, he testified that he had relied totally on the advice of his attorney, who told him to

make a statement because he "faced death," without first informing him of the alternatives or implications involved.

■■■ The determination as to whether a confession has been given voluntarily is made by viewing the totality of the circumstances in an effort to determine whether any inducements have been made in the form of threats, promises or other improper influence. *Nacoff v. State*, (1971) 256 Ind. 97, 267 N.E.2d 165. In reviewing a trial court's ruling as to the voluntariness of a pretrial statement, we will consider that evidence which supports the decision of the trier of fact in the case of contested evidence, and any uncontested evidence presented by the defendant. *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811.

■■■ Two police officers testified at the hearing that at the time the statement was made, in the early evening on the day of the shooting, the defendant appeared to be calm and alert with no indications that he was under the influence of drugs or alcohol. They stated that the defendant was advised of his rights and that the waiver form was read both by and to the defendant. The defendant's attorney, Ray Sine, was present throughout the proceedings, and both he and the defendant were given the opportunity to read the statement before it was signed. Sine testified that he advised the defendant that since he did not have a sufficient defense and since the death penalty was still in force, it would be to his advantage to make a statement. He did not make any guarantees that the State would not seek the death penalty and he informed the defendant that the possibility did exist. He also testified that the defendant's questioning was stopped at one point and continued the next morning, one of the reasons being that he felt that the defendant should rest and fully consider his decision. Sine stated that he was satisfied that the defendant was aware of what he was doing and that he wanted to make the statement.

Based on the conflicting testimony concerning the factual details surrounding the confession, we find no error in the trial court's denial of the defendant's motion to suppress, and in subsequently admitting the statement.

## ISSUE III

The defendant filed a motion in limini prior to the start of the trial, seeking to limit the State's introduction of testimony concerning other crimes which the defendant allegedly had committed the day before the shooting. The trial court denied the motion in part, and State's witness Jerry West was subsequently permitted to testify that the defendant and John Lee had kidnapped him and stolen his car on the day before the shooting. The defendant and Lee were found by two officers asleep in West's car, just prior to the altercation during which the two officers were killed.

■■■ The defendant argues that the testimony should not have been admitted, since in effect the State was attempting to use evidence of crimes separate and distinct from the crime charged, to prove the defendant's guilt. However, as we stated in *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843, "Evidence which is otherwise competent and relevant and tends to prove or disprove a fact in issue is not inadmissible even though it tends to show guilt of another crime, especially if the two crimes are related." The evidence in the instant case completes the story of the crime by providing a possible motive for the shooting. The officers approached the defendant and his companion as they were sleeping in a car, which they had stolen the day before. It could be inferred from such evidence that they shot the officers to avoid being arrested. The evidence was relevant to the crimes charged, and therefore properly admitted.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.