Merle Lee HALL, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 779S185.

Supreme Court of Indiana.

June 14, 1980.

Rehearing Denied Aug. 25, 1980.

Michael E. Hunt, Bloomington, for appellant.

Theodore L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Merle Lee Hall, was convicted by a jury of involuntary manslaughter, Ind.Code § 35–42–1–4 (Burns 1979 Repl.) and being an habitual offender, Ind. Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to eight and thirty years respectively and now appeals raising the following issues:

1. Whether the trial court erred in denying defendant's motion for change of venue from the county;

2. Whether the trial court erred in admitting into evidence certain exhibits which were color slide photographs showing the body of the deceased;

3. Whether the trial court erred in refusing to give certain of defendant's proposed final instructions and in giving the court's own final instruction No. 9 over defendant's objection;

4. Whether the verdict of the jury was supported by sufficient evidence;

5. Whether the trial court erred in denying defendant's motion to dismiss Count II of the amended information, the habitual criminal charge, and in denying defendant's request to strike the allegation of a third felony conviction from this count; and

6. Whether the trial court erred in sentencing the defendant with an allegedly incomplete presentence investigation report.

A summary of the facts from the record most favorable to the state reveals that defendant had been living with the victim Joanne Carline for about four years. (Joanne used the name Joanne Hall although she was not legally married to defendant.) The couple lived at times in a trailer park in Bloomington, Indiana, and at other times in an apartment. In June, 1978, defendant returned to Bloomington after an extended absence in prison. Joanne had been working as a waitress at the Holiday Inn during his absence. Shortly after his return, her co-workers testified that her behavior changed; she started missing work and then appearing at work with bruises all over her body; and that she appeared one time with a large knot on her forehead. Neighbors testified about observing defendant's physical and verbal assaults upon Joanne during this period. Around the middle of July, Joanne was admitted to a Bloomington hospital emergency room with multiple bruises and injuries to her body. She stated at that time that she had been attacked and beaten while walking through a park.

On the night of July 31, 1978, defendant and Joanne were camping at Bean Bloosom Lake with some friends. During the night, the friends testified they heard loud banging noises and Joanne screaming and crying. The next morning, defendant was seen slapping Joanne and she was crying. A few minutes later, Joanne gave a long scream and was seen falling down a long, hilly path. She was taken to the hospital unconscious and died late on August 3, 1978.

When defendant learned of her death, he left town with a girlfriend and was later apprehended in the state of Washington. The evidence indicated that Joanne's death was the result of multiple blunt-force injuries to the head and body resulting in subdural hematoma with acute hemorrhage superimposed upon a chronic subdural hematoma. There was testimony that death as a result of a fall was unlikely, given the nature and location of her bruises and the injury to her head.

## I.

■ Defendant first alleges that the trial court erred in denying his motion for change of venue from the county based upon two arguments. He first claims that he was statutorily entitled to a change of venue as a matter of right because his case was a case where the punishment might have been death. Ind.R.Crim.P. 12. While it is true he was charged with murder, Ind.Code § 35–50–2–3 (Burns 1979 Repl.), the penalty of death only applies to that crime when certain aggravating circumstances are alleged and proved. None of these aggravating circumstances was alleged or shown in defendant's case so the death penalty was not applicable to him. He was not erroneously denied a mandatory change of venue.

■ Defendant also claims that the trial court erred in denying the motion for change of venue based upon the prejudicial effect of pretrial publicity in local newspapers. A trial court's denial of a motion for change of venue under these circumstances will be reversed only for an abuse of discretion. *Williams v. State,* (1979) Ind., 386 N.E.2d 670. However, defendant has not presented this Court with a sufficient record to permit review of the publicity. He has not included in the record any of the newspaper articles, or copies of them, alleged to have prejudiced the jury. Since it is the duty of defendant to make a proper record, this failure bars this Court's consideration of them. *Mendez v. State,* (1977) 267 Ind. 309, 370 N.E.2d 323; *Pulliam v. State,* (1976) 264 Ind. 381, 345 N.E.2d 229.

Defendant claims that these exhibits are too bulky to be incorporated in the transcript and that he has properly named and identified each of them following their exhibit number as is required by Ind.R.App.P. 7.2(A)(3)(b). However, this rule specifically *excludes* "papers, maps, pictures and like materials." Therefore, defendant was not in compliance with our appellate rules and has waived any further consideration of this issue. An error alleged but not disclosed by the record is not a proper subject for review. *Mendez v. State, supra.*

## II.

■ Defendant next contends that it was reversible error to allow into evidence certain photographic slides showing the body of the deceased. He argues that since the exhibits were photographic slides rather than prints and since courtroom lights had to be dimmed and large pictures projected, this prejudicially focused the attention of the jury on the nude body of the victim in an inflammatory manner. However, defendant made no objection to this procedure during the trial and so has waived this ground for appeal. *Beasley v. State,* (1977) 267 Ind. 396, 370 N.E.2d 360. Furthermore, defendant has not included any of the slides, or prints of them, in the record. As discussed under Issue I above, it is the duty of defendant to present a proper record and this failure also bars any consideration of this issue.

## III.

■ Defendant next contends that the trial court erroneously refused his proposed instructions 1, 2, 3, 4, 5, and 9. We first note that it is well settled that the refusal of a trial court to give a tendered instruction is not reversible error if the instruction incorrectly states the law or if the substance of the instruction was adequately covered by other instructions given by the court. *Toliver v. State,* (1978) 267 Ind. 575, 372 N.E.2d 452; *Vacendak v. State,* (1976) 264 Ind. 101, 340 N.E.2d 352.

■ Defendant's proposed instruction No. 1 concerned the principle that evidence of other crimes can only be used to judge defendant's credibility as a witness and not as a fact in determining whether or not defendant committed the instant crime with which he was charged. This principle was fully and adequately covered in the court's final instruction No. 7:

"Evidence has been introduced in this case that the defendant has been heretofore convicted of a crime. You have the right to consider such evidence for whatever bearing it has on his credibility as a witness, but you may not consider such evidence for any other purpose, nor can you draw from it the inference that, because he has been previously convicted of a crime, it is therefore more likely that he is guilty of the crime with which he is now charged."

■ Defendant's proposed instruction No. 2 was also refused by the court. That instruction first covered the state's burden of proving guilt beyond a reasonable doubt and this burden was fully and adequately covered by the court's final instruction No. 3. Defendant's instruction No. 2 also contained the following language:

"It is not sufficient if the State has enveloped the death of JoAnn Hall in mystery. Before you can find the Defendant guilty, the State is required to explain all mystery and to remove all reasonable doubt."

This was properly refused since cloaking the crime in terms of a "mystery" was an incorrect statement of the law. The instruction also contained a statement about the use of circumstantial evidence to prove guilt but this was adequately covered by the court's instruction No. 12. There was no error in the refusal of this instruction.

■ Defendant's proposed instruction No. 3 commented upon one witness's testimony and the manner in which the jury was to evaluate this testimony. There was no error in refusing this instruction since it is not permissible for the court to single out a particular witness and comment upon his testimony. *Dipert v. State*, (1972) 259 Ind. 260, 286 N.E.2d 405.

■ Defendant's proposed instruction No. 4 covered the issue of the intent which must be shown in order to find a defendant guilty. This was more fully and accurately covered by the court's instructions No. 12 and No. 3 which covered the *mens rea* required for each of the relevant crimes. Defendant's proposed instruction No. 5 covered jury deliberations and this was adequately covered by the court's instruction No. 2.

■ Defendant's proposed instruction No. 9 stated the rule that circumstantial evidence must exclude every reasonable hypothesis of the innocence of the accused:

"Where reliance is placed on circumstantial evidence, that evidence must be so conclusive in character that it excludes every reasonable hypothesis of the innocence of the accused."

It is true that this is a correct statement of the law, *Spears v. State*, (1980) Ind., 401 N.E.2d 331. However, the court's instruction correctly covered this point although it was stated in slightly different words:

"Circumstantial evidence alone will not justify a finding of guilty unless the circumstances are entirely consistent with the defendant's guilt, wholly inconsistent with any reasonable theory of the defendant's innocence, and are so convincing as to exclude a reasonable doubt of the defendant's guilt."

Evidence which is "wholly inconsistent with any reasonable theory of . . . innocence" is the same as evidence which excludes every reasonable hypothesis of innocence.

■ Defendant objected at trial to the second paragraph of the court's final instruction No. 9 as being misleading about the weight which a jury can give to expert testimony. This instruction read as follows:

"You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons

given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely."

This was a correct statement of the law and did not imply that any witness was automatically entitled to more credibility than any other, but correctly told the jury that they could consider the expert witness's relative degrees of qualification when weighing the testimony and weigh the opinions of experts against other evidence. *Wright v. Peabody Coal Co.,* (1948) 225 Ind. 679, 77 N.E.2d 116; *Combs v. National Veneer & Lumber Co.,* (1974) 160 Ind.App. 501, 313 N.E.2d 76. We find no error in any of the instructions.

### IV.

Defendant next contends that there was insufficient evidence to support his conviction of involuntary manslaughter. The elements of this crime which the state must prove are that defendant killed another human being while committing or attempting to commit one of several enumerated felonies or misdemeanors, in this case, battery. Ind.Code § 35–42–1–4 (Burns 1979 Repl.).

We have consistently held that this Court does not reweigh the evidence or judge the credibility of witnesses and will consider only that evidence most favorable to the state and all reasonable inferences drawn therefrom. When there is substantial evidence of probative value to support each element of the offense, the verdict of the jury will not be disturbed. *Wofford v. State,* (1979) Ind., 394 N.E.2d 100; *Poindexter v. State,* (1978) 268 Ind. 167, 374 N.E.2d 509. On review, this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the finding of the jury. *Parks v. State,* (1979) Ind., 389 N.E.2d 286; *Jones v. State,* (1978) 268 Ind. 640, 377 N.E.2d 1349.

In the instant case, there was evidence that the victim was subjected to a continuing pattern of abuse from defendant; that defendant was seen hitting her shortly before the fall; that her death was a result of multiple blunt-force injuries to the head and body which had been sustained over a period of time; and that the nature and locations of her injuries were such that death as a result of a fall was unlikely. This was sufficient evidence to support the jury's verdict of involuntary manslaughter.

### V.

Before trial began on Count II, the habitual offender charge, defendant objected to the allegation of a third felony conviction in the information and moved that it be stricken. The court overruled the objection and evidence was introduced at trial showing that defendant had been convicted of three prior felonies. Defendant contends that he was prejudiced by this action since the allegation of more than two felony convictions makes it easier for the jury to determine that the defendant actually has two valid felony convictions. However, we find no error here because we have consistently held that the proof of a third prior conviction is mere surplusage under the requirements of the habitual offender statute. *Jessup v. State,* (1971) 256 Ind. 409, 269 N.E.2d 374; *Hanks v. State,* (1948) 225 Ind. 593, 76 N.E.2d 702.

Defendant next contends that the doctrine of collateral estoppel is applicable to habitual offender proceedings and applies to him in this case. Since this is the first time this precise issue has been raised to us, we will carefully consider how collateral estoppel and the closely related constitutional guaranty against double jeopardy apply to habitual offender proceedings. It is well settled that both this Court and the United States Supreme Court have upheld recidivist statutes against cruel and unusual punishment, double jeopardy, ex post facto, and due process arguments. *Rummel v. Estelle,* (1980) —— U.S. ——, 100 S.Ct. 1133, 63 L.Ed.2d 382; *Spencer v. Texas,* (1967) 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606; *Norris v. State,* (1979) Ind., 394 N.E.2d 144; *Parks v. State,* (1979) Ind., 389 N.E.2d 286. The habitual offender statute does not establish a new "offense" or a separate

crime, but merely provides for the imposition of a greater sentence for the substantive crime charged. The purpose of the statute is to more severely penalize those persons whom prior sanctions have failed to deter from committing felonies. *Norris v. State, supra.*

It is generally held that since habitual criminality is a status or a vehicle for the enhancement of punishment upon the conviction of an additional, substantive crime, prior convictions used to establish the fact of habitual criminality at one trial can be used again after a subsequent felony conviction. This is based upon the reasoning that the use of the prior convictions is for a determination of status only and the additional punishment is imposed for each new crime not for crimes for which the defendant has already been convicted and punished. *People v. Anderson,* (1979) Colo. App., 605 P.2d 60; *State v. Rogers,* (1979) 93 N.M. 519, 602 P.2d 616; *Pearson v. State,* (1975) Tenn., 521 S.W.2d 225; *State v. Salazar,* (1973) 95 Idaho 650, 516 P.2d 707; *State v. Losieau,* (1967) 182 Neb. 367, 154 N.W.2d 762; *State v. Gaskey,* (1963) 255 Iowa 967, 124 N.W.2d 723; *City of Cincinnati v. McKinney,* (1955) 101 Ohio App. 511, 137 N.E.2d 589.

■ Although it is clear from the above that double jeopardy does not attach to prior convictions when they are used to enhance the punishment of a subsequent crime under a recidivist statute, it is also clear that a defendant may raise as a defense the asserted invalidity of those prior convictions if he can show that he was not adequately represented by counsel or knowingly and intelligently waived such representation at the time of the prior convictions. *Burgett v. Texas,* (1967) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319; *State v. Freitas,* (1979) Hawaii, 602 P.2d 914; *State v. O'Neil,* (1978) 91 N.M. 727, 580 P.2d 495. On this point, we recognize that defendant has the burden of producing evidence in support of his defense that his prior convictions are invalid and this is consistent with where the burdens are placed when defendant directly attacks the validity of his conviction. *State v. O'Neil, supra.*

■ We now turn to the doctrine of collateral estoppel which is embodied in the constitutional guaranty against double jeopardy. This doctrine provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson,* (1970) 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. Defendant contends that in his case the issue of the validity of his prior convictions was an issue of ultimate fact which had been determined adversely to the state at a previous trial and that therefore the same prior convictions could not be used in the instant trial. We do not agree.

■ The evidence from the record shows that defendant pled guilty to a charge of burglary in Polk County, Arkansas, in 1965. He also pled guilty to a charge of escape from the Indiana State Farm in Putnam County, Indiana, in 1967. He was subsequently charged with rape and with being an habitual offender in Monroe County, Indiana, in 1977. The state based the habitual offender count upon the Arkansas and Putnam County convictions. Defendant was found guilty of the rape by a jury, but the habitual offender count was dismissed by the court on the basis that the state's exhibits were not sufficient to show a knowing and voluntary plea of guilty at the two prior convictions. At the time of the instant murder charge, the Arkansas and Putnam County convictions were again presented as two of the three prior felonies supporting the habitual offender count. Defendant made a pretrial motion to dismiss the habitual offender count based upon his collateral estoppel argument, but this motion was overruled.

There is no merit to defendant's allegation that collateral estoppel applies to the facts in his case. It is clear that the habitual offender charge in the instant case is based upon the *fact* of two prior felony convictions. The action of the trial court at the previous habitual offender trial did not operate to "acquit" defendant of the two

prior felony convictions. Its action involved only the sentencing to be imposed upon the 1977 rape charge and a determination of defendant's status as an habitual offender based upon the evidence presented at that time. It is clear that there is nothing to prevent the state from alleging the fact of the prior felony convictions again at the instant trial since those two prior convictions do still exist.

In the instant trial, the state introduced a certified copy of the Arkansas proceedings which showed that defendant was represented by counsel and a complete transcript of the Putnam County proceedings which showed that defendant had voluntarily waived his right to counsel at that time. Since the "invalidity" of a prior conviction is a defense, it is defendant's obligation to present evidence in support of his defense. The only evidence defendant introduced was his own unsupported allegation that the records presented were untrue. However, the records which were introduced were clearly sufficient to show the validity of the prior convictions and uphold the jury's verdict that defendant was an habitual offender.

■ Defendant further contends that the application of the habitual offender statute to him had an ex post facto effect since the old habitual offender law required proof of two unrelated prior felony convictions and proof of sentences served on such convictions while the new law requires proof only of the two prior unrelated felony convictions. Defendant contends that this lessens the burden of proof borne by the state and that this has an ex post facto effect as to him. There is no merit to this contention since the new statute went into effect at least ten months before the instant crime and, furthermore, the United States Supreme Court has held that since recidivist statutes impose punishment on none but future crimes, they have no ex post facto effect. *McDonald v. Massachusetts*, (1900) 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542.

## VI.

■ Defendant finally contends that the trial court erred in refusing to grant defendant's motion to continue sentencing, and in sentencing defendant without a complete presentence report. A complete, written, presentence report was prepared by the Monroe County Adult Probation Dept. and was considered by the judge as required by Ind.Code § 35–4.1–4–9 (Burns 1975). At the sentencing hearing, defendant complained that one paragraph of the report concerning the circumstances surrounding the instant crime was very biased against him, and, at his request, the trial court struck that paragraph from the report. We find this did not prevent the court from complying with the sentencing statute since only one paragraph was stricken from the completed report and the sentencing judge had been the presiding judge at defendant's trial and was very familiar with the evidence of the circumstances surrounding the killing which was all that was deleted from the presentence report. Furthermore, the judge gave defendant every opportunity at the hearing to present his own version of the incident, but defendant refused to cooperate. There was no error here.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.