Lewis C. REIGHARD, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 982S354.

Supreme Court of Indiana.

Jan. 5, 1984.

Cole G. Banks, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Lewis C. Reighard, was found by a jury to be guilty of the offense of attempted murder, a Class A felony, Ind.Code §§ 35–41–5–1, 35–42–1–1(1) (Burns 1979 Repl.), but was also found to be mentally ill. He was sentenced to the Indiana Department of Correction for a term of twenty years. He raises the following two issues in this direct appeal:

1. Whether the trial court erred in refusing to give one of defendant's tendered instructions; and

2. Whether the verdict was supported by sufficient evidence and was not contrary to law.

A brief summary of the facts from the record most favorable to the state shows that in June of 1981, defendant's wife, Beverly Reighard, felt the marital relationship was deteriorating, established a separate residence, and filed for a divorce. On the afternoon of August 25, 1981, defendant took Beverly home from work. They went to Beverly's apartment, since they planned to take their son to the movies. They talked about their relationship and Beverly told defendant there would not be a reconciliation. As Beverly started to get ready to go to the movies, she heard the sound of a gunshot and felt a thump on her chest. Defendant had shot her in the back and the bullet passed through her body. Beverly turned around and saw defendant putting a gun in a white paper bag. She ran outside of the apartment and called for help.

Defendant left the apartment and went to the home of Judy Seely and informed her that he had shot his wife. Later, he went to the home of his brother-in-law where he returned the gun which had been taken without the owner's permission. Subsequently, he was apprehended by the police and confessed to shooting his wife. One police officer testified that defendant appeared visibly upset and nervous when he was apprehended and said that he only wished he had an extra bullet so that he could have ended it for both of them.

Evidence was presented throughout the trial that defendant suffered from a form of mental illness and was often depressed. In September of 1979, the infant son of Beverly and defendant died, and defendant became more despondent. Beverly testified that defendant spent a lot of time at the gravesite and would sit on the couch and rock back and forth pretending that he was talking to the baby. Defendant was also very distraught over the deteriorating marital relationship and was upset that Beverly was dating other men during the separation. Evidence showed that another disturbance occurred during the separation in June of 1981. Defendant and Beverly were riding in a car and talking about their separation. When Beverly said she was dating another man, defendant pointed a gun at her and said if he couldn't have her, nobody else could either. Beverly pushed the gun away and jumped out of the car. She heard gunshots as she ran away.

Other testimony showed that defendant's mental condition affected his job performance. Defendant's sister testified that on August 9, 1981, she rushed defendant to an emergency room for treatment when he came to her house and was shaking very badly and said he couldn't take anymore. Several psychiatrists testified during the trial that defendant was mentally ill. He had been under the care of the Southwestern Mental Health Center since his first divorce. One of the workers at the Health Center talked to defendant about taking a leave of absence from his job, but he said he couldn't take time off because he had three children to support.

I.

Defendant first alleges that the trial court erred in refusing his tendered in-

struction Number 2. That instruction reads as follows:

## "DEFENDANT'S INSTRUCTION NO. 2

"You are aware that the defendant has raised the defense of insanity in this case. You, as jurors, are not bound by definitions or conclusions as to what experts state is mental disease or defect.

"A mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior control. Whether the defendant has a mental disease or defect is ultimately for you, the jurors, as triers of the fact.

"Ideally, psychiatrists should furnish the raw data upon which the legal judgment is based. It is the psychiatrist who informs as to the mental state of the accused—his characteristics, his potentialities and his capabilities. But once this information is disclosed, it is society as a whole represented by you, the jurors, which decide whether a man with the characteristics described should be or should not be held accountable for his acts.

"The jury, as the trier of the facts, remains the sole sentinel in the protections of both the rights of the accused and welfare of society, enabling finally to consider all relevant facts pertaining to the defendant's mental state at the time the act was committed and being thereby better qualified to render the ultimate moral judgment under the law."

The trial court refused this instruction and gave its own instruction covering the same points:

## "COURT'S FINAL INSTRUCTION NO. 31

"In the course of the trial there has been introduced the testimony of several witnesses, some of whom are referred to as expert witnesses, and some of whom are referred to as lay witnesses. You are instructed that an expert witness is one who is presumed to have special qualifications in his profession or vocation by reason of education, training and experience. You are to weigh the testimony of an expert witness in the same manner as you do the testimony of any other witness, taking into consideration the probability of the truth of which he speaks, together with the facts from which he draws his conclusion. You as jurors are not bound by definitions or conclusions as to what experts state is a mental disease or defect. Mental disease or mental defect includes any abnormal condition of the mind which substantially impairs behavior controls. Experts have testified as to their findings and conclusions as to the mental condition of the defendant. You should consider the expert testimony in light of all other testimony presented concerning the development, adaption and functioning of the defendant's mental and emotional processes and behavior controls.

"Generally, a lay witness may not express an opinion, however, any person who had the opportunity to observe the defendant is permitted to express an opinion as to sanity. In determining the value of such opinion, you should consider the opportunity that such witness had to observe the facts and his knowledge of an experience with the defendant.

"The jury has the right to accept or reject any or all of the testimony of witnesses, either expert of lay witnesses on the question of insanity and mental illness. You will apply the general rules for determining the credibility of witnesses. You are not required to necessarily accept the ultimate conclusions of experts or lay witnesses as these opinions may be used by you to aid you in your deliberations. You, the jury, must determine for yourselves from all the testimony, lay and expert, whether the nature and degree of any disability are sufficient to establish a mental disease, a mental defect or a mental illness."

Defendant argues that his tendered instruction more accurately defines the role

of psychiatric testimony as it gives the psychiatrists the role of providing the data upon which a legal judgment could be based and clearly informs the jury it has the latitude to accept or reject the conclusions of the expert. We find the trial court's instruction adequately covered this issue as the jury was instructed that it had the right to accept or reject any of the testimony of either expert or lay witnesses and that it was not required to accept the ultimate conclusions of either expert or lay witnesses.

Defendant further argues that his instruction clearly instructed the jury that it was to consider all relevant facts pertaining to his mental state at the time the offense was committed and that the court's instruction did not do this. We disagree with defendant's position as the court's instruction told the jury to consider "the expert testimony in light of all other testimony presented concerning the development, adaptation and functioning of the defendant's mental and emotional processes and behavior controls." The instruction also informed the jury that they must determine for themselves "from all the testimony, lay and expert, whether the nature and degree of any disability are sufficient to establish a mental disease, a mental defect or a mental illness." The trial court's final instruction Number 31 was a correct statement of the law and adequately covered the substance of defendant's instruction Number 2. There was no error in the trial court's refusal to give defendant's instruction. *Hall v. State*, (1980) Ind., 405 N.E.2d 530; *Toliver v. State*, (1978) 267 Ind. 575, 372 N.E.2d 452; *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352.

## II.

Defendant next contends that the evidence was insufficient to sustain the jury's verdict and was contrary to law for the reason that the evidence revealed that he was insane at the time of the offense. The law in Indiana is firmly established that the burden of proving insanity is given to the person who interposes the defense. Ind.Code § 35-41-4-1 (Burns 1979 Repl.); *Taylor v. State*, (1982) Ind., 440 N.E.2d 1109; *Emory v. State*, (1981) Ind., 420 N.E.2d 883; *Price v. State*, (1980) Ind., 412 N.E.2d 783. Defendant is therefore appealing from a negative judgment; only where the evidence is without conflict and leads inalterably to a conclusion contrary to that reached by the trier of fact will the judgment be disturbed. *Thomas v. State*, (1981) Ind., 420 N.E.2d 1216; *Price v. State*, 412 N.E.2d at 786.

Indiana law now provides for alternative verdicts when the defense of insanity is raised. Our statute reads in pertinent part:

"In all cases in which the defense of insanity is interposed, the jury (or the court if tried by it) shall find whether the defendant is:

(1) Guilty;

(2) Not guilty;

(3) Not responsible by reason of insanity at the time of the crime; or

(4) Guilty but mentally ill at the time of the crime."

Ind.Code § 35-36-2-3 (Burns 1983 Supp.). This Court has upheld the constitutional validity of this statute. *Taylor v. State*, 440 N.E.2d at 1113. We found that the legislature had provided the alternative verdict of guilty but mentally ill to cover the intermediate ground between the extremes of sane or insane and to cover those circumstances where a defendant suffers from a mental illness or deficiency yet remains capable of appreciating right from wrong and conforming his conduct to the requirements of the law.

In *Taylor*, we discussed the law in detail and explained

"This Court has long recognized, however, that the existence of a mental disease or deficiency does not *ipso facto* render a defendant legally insane. *See, e.g. Hill v. State*, [ (1969) 252 Ind. 601, 251 N.E.2d 429], *supra; see also, People v. Ramsey*, (1979) 89 Mich.App. 468, 280 N.W.2d 565; *State v. Stacy*, (1980) Tenn. 601 S.W.2d 696. For purposes of criminal law, the focal point always has been

whether any particular defendant acted with the intent and culpability for which the imposition of criminal penalties was justified. *Id.* That focus is perpetuated in the statutory definitions and verdict alternatives at issue.

"It is recognized in Ind.Code § 35–5–2–3, *supra* [presently codified as Ind.Code § 35–36–2–3 (Burns 1983 Supp.)], that while a particular defendant may have been 'mentally ill' at the time he committed an offense, the fact that his thoughts, feelings, or behavior were affected or his functions impaired does not automatically negate the *mens rea* necessary to the offense."

   *     *     *     *     *     *

"[T]he question of whether a particular defendant is not responsible by reason of insanity or guilty but mentally ill may not always be easily resolved. That fact, of course, does not render the legislature's definitions and verdicts invalid, for difficult factual questions may arise in any area of the law. Our legislature's attempt to ameliorate the problems which have plagued this troublesome area of law is commendable; in rejecting defendant's constitutional challenges to Ind.Code § 35–5–2–3, *supra,* we emphasize that courts and lawyers alike should strive to insure that jurors, in assessing the delicate factual question which confronts them, are equipped with an understanding of the terms 'insanity' and 'mentally ill', as well as the crucial distinction between the legislatively-defined concepts."

*Taylor v. State,* 440 N.E.2d at 1111–1113.

The record in the instant case reveals that the jury was properly instructed on the elements of attempted murder, as well as lesser included offenses. Several instructions defined the necessary legal terms, including the definitions of legal insanity, mentally ill, substantial capacity, intentionally and knowingly. The state's burden of proving that defendant committed all the elements of the offense charged was explained along with the explanation that defendant bore the burden of proving

the defense of insanity. The record shows that the jury was fully instructed on all the legal points necessary for their determination of the factual issue.

The record further shows that both psychiatrists and lay witnesses testified about defendant's mental condition. The psychiatrists all found that defendant was suffering from a mental illness but none had actually found him insane. One doctor testified he did not believe defendant's mental illness kept him from being in touch with reality and that defendant was not psychotic at the time of the offense. Another doctor testified that the mental illness would not cause defendant to have an irresistable impulse he could not control. Another doctor who had seen defendant a week before the shooting at the mental health center, said he had seen no symptoms in defendant of hostility towards his wife and felt defendant could tell right from wrong at that time. He testified that defendant was being treated for his depression with medication but that he had told the health center staff that if defendant didn't make more positive progress in another week, he would consider hospitalization.

Many lay witnesses testified as to their observations and opinions about defendant's mental condition at the time of the shooting. These witnesses included defendant's wife, his ex-wife, sisters, friends, co-workers, supervisor and union steward. All of the witnesses testified that defendant was having severe mental and emotional problems at the time the shooting occurred. Some of the witnesses testified that while defendant had been treated for a nervous condition since he was a teenager, his mental condition had started to deteriorate in 1979 when his infant son had died. They testified that defendant blamed himself for the child's death because he was home with the boy but was asleep when he died in his crib. Several witnesses testified that they felt defendant's mental condition had become much worse during the two months prior to the shooting. Some family members said they felt he should have

been in a hospital for treatment at that time.

■ The jury also heard testimony from police officers and other witnesses about defendant's actions on the day of the shooting. Defendant was cooperative with the police and voluntarily told them about the shooting. Several of the officers stated that they did not notice anything unusual about defendant's appearance or composure when he was arrested. The jury was entitled to consider both the lay and expert testimony, as well as defendant's actions in assessing his mental capacity at the time of the shooting. *Morris v. State*, (1979) 270 Ind. 245, 384 N.E.2d 1022.

■ It is clear that the jury heard sufficient testimony here to support its verdict of guilty but mentally ill and was fully instructed on the elements of the offense charged and the legal definitions of "insanity" and "mentally ill". It was the duty of the jury to apply the law to the specific factual situation and determine whether defendant was not responsible by reason of insanity or was guilty but mentally ill. From the evidence presented in this case, the jury was justified in finding defendant guilty but mentally ill.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.