Jack WRIGHT, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 82SC384.

Supreme Court of Colorado, En Banc.

Nov. 13, 1984.

David F. Vela, Colorado State Public Defender, Rachel A. Bellis, Deputy State Public Defender, Denver, for petitioner.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for respondent.

NEIGHBORS, Justice.

We granted certiorari to review the court of appeals' decision in *People v. Wright*, 662 P.2d 489 (Colo.App.1982), upholding the trial court's denial of the defendant's Crim.P. 35(c) motion to vacate his 1964 conviction. We affirm the court of appeals' judgment.

### I.

In 1964, the defendant, Jack Leon Wright, then 19 years old, was charged with aggravated robbery and conspiracy to commit aggravated robbery in connection with the robbery of a convenience store in Northglenn, Colorado. The defendant initially entered pleas of not guilty and not guilty by reason of insanity to the charges. After a court-appointed psychiatrist, Dr. Charles A. Rymer, found him to be sane, the defendant tendered a plea of guilty to aggravated robbery. Before accepting the defendant's plea, the Adams County District Court judge read the information to the defendant, advised him of the possible consequences of his plea, and explained the penalties that could be imposed by the court. The defendant persisted in pleading guilty and the court accepted his plea to

the aggravated robbery charge.[1] The court sentenced the defendant to an indeterminate term at the state reformatory. The conspiracy charge was dismissed on the People's motion, apparently as part of a plea agreement.

In January of 1977, following his conviction for a subsequent aggravated robbery, the defendant appeared in the Adams County District Court for sentencing pursuant to the "little" Habitual Offender Act. § 16–13–101(1), 8 C.R.S. (1983 Supp.).[2] At the sentencing hearing, the defendant admitted the existence of two prior felony convictions, one of which was the 1964 conviction for aggravated robbery, in exchange for having a third habitual criminal count dismissed.[3]

In 1979, a Jefferson County District Court jury found the defendant guilty of fourteen counts of theft, theft by receiving, burglary, and conspiracy. During the habitual criminality phase of the trial, the prosecution offered the 1964 Adams County aggravated robbery conviction as one of the predicate felonies. Defense counsel attacked the validity of that conviction, arguing that the Crim.P. 11 advisement had been fatally defective because the Adams County judge merely read the information to the defendant and failed to explain to him the nature of the charge and to ascertain the defendant's understanding of the charge. After reviewing the transcript of the 1964 providency hearing, the Jefferson County judge agreed that the 1964 advisement had been inadequate because there was no explanation of the charge, nor was there a determination that the defendant understood the nature of the charge. Con-

---

1. The charge to which the defendant pleaded guilty was based on section 40–5–1, 3 C.R.S. (1953), which provided in pertinent part:

    *Robbery—penalty.*—Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation. Every defendant found guilty of robbery, except as hereinafter provided, shall be punished by confinement in the penitentiary for a term of not less than one nor more than fourteen years. Every defendant found guilty of robbery shall be confined in the penitentiary for a term of not less than two years, or for life:

    (1) If in the perpetration of such robbery he is armed with a dangerous weapon with intent, if resisted, to kill, maim or wound the person robbed or any other person.

    . . . .

    Provided, however, that where the person convicted of robbery or convicted of robbery under the circumstances as defined in subsections (1), (2), or (3), is a person under the age of twenty-one years at the time of conviction, he may be sentenced to confinement in the state reformatory, or in the state penitentiary, in the discretion of the court; and, if sentenced to the state penitentiary, the duration of the sentence to be imposed shall be within the discretion of the court, the same, however, to be for a term of not less than one year nor more than ten years.

2. At the time of the offense, section 16–13–101, 8 C.R.S. (1973), provided:

    *Punishment for habitual criminals.* (1) Every person convicted in this state of any felony for which the maximum penalty prescribed by law exceeds five years who, within ten years of the date of the commission of the said offense, has been twice previously convicted upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony shall be adjudged an habitual criminal and shall be punished by confinement in the state penitentiary for a term of not less than twenty-five years nor more than fifty years.

    (2) Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony, shall be adjudged an habitual criminal and shall be punished by imprisonment in the state penitentiary for the term of his or her natural life. Such former conviction or convictions and judgment or judgments shall be set forth in apt words in the indictment or information. Nothing in this part 1 shall abrogate or affect the punishment by death in any and all crimes punishable by death on or after July 1, 1972.

3. Thus, the defendant avoided a probable life sentence under the "big" habitual criminal statute, section 16–13–101(2), 8 C.R.S. (1978). Instead, his sentence was enhanced only to the extent permitted by the provisions of the "little" habitual criminal statute, section 16–13–101(1), 8 C.R.S. (1978).

sequently, the 1964 felony conviction was not admitted into evidence during the trial which resulted in the imposition of a life sentence upon the defendant.[4]

On June 11, 1980, the defendant filed a *pro se* motion under Crim.P. 35(c) in the Adams County District Court to vacate and set aside the 1964 judgment of conviction. At the hearing on the motion, the defendant argued that the doctrine of collateral estoppel precluded the Adams County District Court from reconsidering the issue of whether there had been a proper Crim.P. 11 advisement in 1964, because the Jefferson County District Court had previously ruled that the advisement was constitutionally infirm. The trial court denied the defendant's motion, finding that the doctrine of collateral estoppel was inapplicable, that a reconsideration of the defendant's 1964 guilty plea was barred due to the defendant's reaffirmation of that plea in the 1977 proceedings, and that, in any event, the 1964 plea was valid.

The court of appeals affirmed the ruling of the Adams County District Court on the basis that the doctrine of collateral estoppel was inapplicable to Crim.P. 35(c) proceedings. The court further held that since the defendant had admitted his guilt to the 1964 felony during the 1977 Adams County proceedings, the district court did not err in determining that the 1964 guilty plea had been entered in compliance with the requirements of Crim.P. 11.

## II.

The defendant first claims that since the Jefferson County District Court had previously ruled that the 1964 Crim.P. 11 advisement was fatally defective, the doctrine of collateral estoppel precluded the re-litigation of that issue in the Adams County District Court. We reject his argument.

The doctrine of collateral estoppel or issue preclusion is an integral part of the concept of double jeopardy which is proscribed by the United States and Colorado Constitutions. U.S. Const. amend. V; Colo. Const. art. II, § 18; *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *People v. Horvat*, 186 Colo. 202, 527 P.2d 47 (1974). We have recognized that the doctrine is as applicable to criminal proceedings as it is to civil proceedings. *Trujillo v. People*, 178 Colo. 136, 496 P.2d 1026 (1972). The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194.

Whether a district court in a Crim.P. 35(c) proceeding is barred from considering the validity of a Crim.P. 11 advisement previously found to be invalid for the purpose of sentence enhancement in an habitual criminal proceeding is a question of first impression in Colorado. This issue, however, was addressed by the Indiana Supreme Court in *Hall v. State*, 273 Ind. 507, 405 N.E.2d 530 (1980). In *Hall*, the defendant pleaded guilty to charges of burglary in 1965 and escape in 1967. The defendant was later charged with rape and one count of habitual criminality, based on the 1965 and 1967 felony convictions. He was convicted on the rape charge, but the habitual offender count was dismissed by the trial court on the basis that the state's exhibits were insufficient to show the defendant's knowing and voluntary entry of his pleas of guilty. The defendant was subsequently charged with murder, but was convicted of involuntary manslaughter. Again, the 1965 and 1967 convictions were offered into evidence as two of three prior felony convictions supporting the habitual criminal count. The defendant argued that the 1965 and 1967 convictions should not have been admitted since the issue of the validity of his prior convictions was an issue of ultimate fact which had been determined adversely to the state at his previous trial.

---

**4.** The Jefferson County convictions and life sentence were reversed and remanded for a new trial on grounds unrelated to the issue presented here in an unpublished opinion by the court of appeals. *People v. Wright*, No. 80CA0142 (Colo. App. March 11, 1982).

The court rejected the defendant's argument, stating:

There is no merit to defendant's allegation that collateral estoppel applies to the facts in his case. It is clear that the habitual offender charge in the instant case is based upon the *fact* of two prior felony convictions. The action of the trial court at the previous habitual offender trial did not operate to "acquit" defendant of the two prior felony convictions. Its action involved only the sentencing to be imposed upon the 1977 rape charge and a determination of defendant's status as an habitual offender based upon the evidence presented at that time.

*Hall*, 405 N.E.2d at 536–37 (emphasis in original).

■■■ We find persuasive the reasoning in *Hall* quoted above, which recognizes that, in the context of habitual criminality proceedings, collateral estoppel does not apply to trial court rulings which merely exclude evidence concerning the defendant's status as an habitual criminal.[5] Thus, the Adams County District Court was not bound to set aside its judgment of conviction on the basis of the Jefferson County District Court's evidentiary ruling that the defendant's 1964 conviction was inadmissible because the Crim.P. 11 advisement was constitutionally inadequate. The defendant's 1964 conviction still exists and he now seeks to have it vacated. We conclude that the issues actually litigated in each court lack the identity necessary to fulfill one of the requirements of collateral estoppel. *See Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1974). Moreover, the adequacy of the defendant's 1964 Crim.P. 11 advisement was not an issue necessary to the determination of the defendant's guilt on the substantive crimes charged in 1979, nor was the 1964 conviction in any way a part of the final judgment. *Id.* Since the 1964 plea was not admitted into evidence by the

Jefferson County District Court, no issue of ultimate fact was resolved.

### III.

We next turn to the issue of whether the Adams County District Court erred in concluding that the 1964 Crim.P. 11 advisement had been adequate. The defendant contends that, even if collateral estoppel does not apply, the trial court erred in finding that the providency hearing advisement was adequate. We reject his argument.

This court has recently examined the requirements for a valid guilty plea. *Ramirez v. People*, 682 P.2d 1181 (Colo.1984); *People v. Leonard*, 673 P.2d 37 (Colo.1983); *People v. Muniz*, 667 P.2d 1377 (Colo.1983). We have recognized that due process of law requires that a conviction based on a guilty plea must be voluntarily and understandingly made, and that a plea cannot be either a voluntary or a knowing and intelligent admission of guilt unless the defendant receives real notice of the true nature of the charge against him. *Ramirez*, 682 P.2d at 1184; *Leonard*, 673 P.2d at 39. We have also recognized that the degree of explanation the court is required to give is dependent on the nature and complexity of the crime. *E.g., Muniz*, 667 P.2d at 1383; *Watkins v. People*, 655 P.2d 834 (Colo. 1982).

■■■ In determining the validity of the defendant's 1964 guilty plea, we must look first to the provisions of Crim.P. 11 then in effect. In 1964, a trial court could not accept a plea of guilty without first: "(1) determining the plea is made voluntarily with understanding of the nature of the charge, and (2) explaining fully to the defendant his right to trial by jury, his right to counsel and the possible penalties provided by the statute for the offense charged." *Muniz*, 667 P.2d at 1382. At that time the court was not required to

---

**5.** We save for another day the issue of whether the constitutional prohibition against double jeopardy and/or the doctrine of collateral estoppel bar the prosecution from reusing a prior felony conviction in support of an habitual criminal charge if, in a prior habitual offender proceeding based on the same felony, the jury returned a verdict of not guilty. *See People v. Quintana*, 634 P.2d 413 (Colo.1981); *Baker v. State*, 425 N.E.2d 98 (Ind.1981).

follow any prescribed ritual in accepting a defendant's guilty plea.[6] However, there must be an adequate basis in the record to support a determination that the defendant understood the nature of the charge against him. In the absence of some affirmative showing of compliance with Crim.P. 11, a guilty plea cannot be accepted and any judgment and sentence which is entered on the plea is void. *People v. Randolph*, 175 Colo. 454, 488 P.2d 203 (1971).

The transcript of the 1964 providency hearing reveals the following sequence of events. The defendant, represented by counsel, informed the trial court of his desire to plead guilty to aggravated robbery. In exchange, the conspiracy charge against him was to be dismissed. Before accepting the defendant's plea, the court read the information charging aggravated robbery.[7] The court explained the possible penalties and read the applicable statutory provisions concerning punishment. The trial judge then ascertained that no promises or threats affecting the defendant's plea had been made, and that the plea was freely made by the defendant after consultation with his attorney. The defendant stated that he understood his right to a jury trial and stipulated that the probation report could be used to establish a factual basis for the plea.

The People argue that the reading of the information was sufficient to establish the defendant's understanding of the nature of the aggravated robbery charge. We agree. In *People v. Edwards*, 186 Colo. 129, 526 P.2d 144 (1974), we held that reading the information to the defendant who was charged with aggravated robbery was sufficient to establish that he understood the nature of the charges against him. In *Edwards*, the information charged Edwards with the commission of a robbery while he was armed with a dangerous weapon.[8] In contrast, the information in the present case names three co-defendants, one of whom was Wright, as those charged with robbing the victim, and then alleges that only the co-defendant Stephens was the person armed with a dangerous weapon. We conclude that this distinction does not provide a principled basis to depart from our holding in *Edwards*. In each case the defendant was advised of the nature of the charge when the information was read to him. Therefore, the defendant was aware of the elements of the crime to which he was pleading guilty. Even though the defendant here was apparently prosecuted on an accessory theory,[9] it was

---

6. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which requires that the court explain to the defendant each element of the offense as charged, has not been given retrospective application by this court. *Ward v. People*, 172 Colo. 244, 472 P.2d 673 (1970).

7. The information stated as follows:
MARVIN DANSKY, District Attorney within and for the Seventeenth Judicial District of the State of Colorado, in the name and by the authority of the People of the State of Colorado, informs the Court, that on the 27th day of October A.D. 1963, at the said County of Adams in the state of Colorado, DARRELL GRAY STEPHENS, JACK WRIGHT and KENNETH CHAVEZ did make an assault upon one GEORGE REED, and then and there, feloniously and violently and by force and intimidation, did rob, seize, steal, take and carry away $125.00 in moneys of the United States of America from the person and against the will of said GEORGE REED; and that said DARRELL GRAY STEPHENS, when he so robbed said GEORGE REED, was then and there armed with a dangerous weapon, with intent, if resisted, to maim, kill or wound said GEORGE REED and any other person.

8. The information charging Edwards with aggravated robbery alleged that:
JOHN ARTHUR EDWARDS did make an assault upon Richard Baker, and then and there, feloniously and violently, and by force and intimidation, did rob, seize, steal, take and carry away money from the person and against the will of said Richard Baker; and that said defendant, JOHN ARTHUR EDWARDS, when he so robbed said Richard Baker, was then and there armed with a dangerous weapon, with intent, if resisted, to maim, wound or kill said Richard Baker, and any other person; ...

9. The accessory statute in effect at the time this case was filed provided that "[a]n accessory is he who stands by and aids, abets or assists.... He who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly." § 40–1–12, 3 C.R.S. (1963).

unnecessary for the trial court at the providency hearing to explain that legal theory to him under the provisions of Crim.P. 11 then in effect.

We hold that this case is factually indistinguishable from *Edwards*. Therefore, the judgment of the court of appeals is affirmed.