The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado corporation, Plaintiff-Appellant,

v.

BOARD OF ASSESSMENT APPEALS of State of Colorado, M.E. Fisch, R.N. Patton, Sheldon D. Brooks, in their capacity as members of said Board; The Board of County Commissioners For Adams County, Colorado; Adams County, Colorado Board of Equalization; and P.M. Mirelez, J.G. Campbell, James M. Covey, in their capacity as members of said Board of County Commissioners and as members of the Adams County Board of Equalization; Pat Reale, County Assessor For Adams County; Raymond W. Carper, as Property Tax Administrator, Property Tax Division, State of Colorado, Defendants-Appellees,

and

Hyland Hills Metropolitan Park and Recreation District, Donald R. Critchfield, Donal G. Waddell, Bill Curphy, Gilbert Bean, Sharon J. Tait, in their capacity as members of said District Board, Defendants-Appellees.

No. 82SA428.

Supreme Court of Colorado, En Banc.

Feb. 25, 1985.

John L. Traylor, Denver, for plaintiff-appellant.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Billy Shuman, Asst. Atty. Gen., Denver, for defendants-appellees, Board of Assessment Appeals and Property Tax Administrator.

Kevin Maggio, Adams Co. Atty., Christian M. Lind, Kathyrn Schroeder, Asst. County Attys., Brighton, for defendants-appellees, Board of County Com'rs and Adams County Assessor.

Pehr, Fox & Pehr, P.C., Perry W. Fox, Richard L. Fuller, Westminster, for defendants-appellees, Hyland Hills Metropolitan Park and Recreation Dist.

NEIGHBORS, Justice.

Mountain States Telephone and Telegraph Company appeals the judgment of the Adams County District Court ordering the state property tax administrator to value certain property the utility owns for tax purposes for the years 1969 through 1977, and the Adams County Assessor to assess and collect the taxes due on the property to a recreation district for those years. We affirm the judgment of the district court.

## I.

Mountain States Telephone and Telegraph Company (Mountain Bell) was the plaintiff in the district court. The defendants were: the Colorado Board of Assessment Appeals and its members (BAA);[1] Raymond W. Carper, Colorado Property Tax Administrator (Administrator); Pat Reale, Adams County Assessor (Assessor); the Adams County Board of Equalization and its members (ABOE);[2] and the Hyland Hills Metropolitan Park and Recreation District (District) and its board members.[3]

The number of parties and the diversity of their interests in this appeal require review of the factual and procedural background of this case and an overview of the several statutory enactments involved.[4]

---

1. The individuals who comprise the BAA are M.E. Fisch, R.N. Patton, and Sheldon D. Brooks.

2. Under section 39–8–101, 16B C.R.S. (1982), the board of equalization for each county is comprised of the members of that county's board of county commissioners. The commissioners sued in their capacities as members of the ABOE are P.M. Mirelez, J.G. Campbell, and James M. Covey.

3. The directors of the District are: Donald R. Critchfield, Donal G. Waddell, Bill Curphy, Gilbert Bean, and Sharon J. Tait.

4. The District also filed a notice of appeal and characterized itself as a cross-appellant in an amended designation of parties and in its opening brief. Mountain Bell filed a motion to dismiss the District's cross-appeal on the ground that the District was not an aggrieved party since it sought only affirmance of the trial court's order. See C.A.R. 1(d) and C.A.R. 28. We granted Mountain Bell's motion on January 27, 1983.

In their brief, the BAA and the Administrator contend that the district court erred in ordering the Administrator to determine the valuation of the Zuni property located within the District for assessment purposes. They argue that the Administrator's duties include only valuing the utility as a unit and apportioning the valuation of assessment to the counties in the state. They claim that the assessor in each county is statutorily required to sub-apportion the countywide

## A.

The District was created on October 10, 1955, by an order of the Adams County District Court issued pursuant to ch. 199, sec. 3, § 89–12–1, 1955 Colo.Sess. Laws 563, 564.[5] *See In re the Organization of District Fifty Metropolitan Recreation District, Adams County, Colorado,* No. 7279 (Adams County District Court Oct. 10, 1955). In its order, the court excluded from the District all Mountain Bell real estate, and the buildings, improvements, machinery, and equipment located on Mountain Bell's property. The property was excluded pursuant to the statutory mandate which provided that certain classes of real property could not be included in the District without the owners' consent. *See* ch. 199, sec. 8, § 89–12–1, 1955 Colo.Sess. Laws 563, 567–68.[6]

In November 1968, Mountain Bell purchased 19.5 acres of land located at 52nd Avenue and Zuni Street in Adams County (the Zuni property). Before Mountain Bell purchased the Zuni property, it had been used for residential purposes and, because it was located within the District, it was subject to assessment by the Assessor and levy by the board of county commissioners for District tax purposes.[7] Mountain Bell, after acquiring the Zuni property in 1968, has used it in connection with its public utility operations and has considered the property to be excluded from the District pursuant to the 1955 court order creating the District.

As a public utility, Mountain Bell participates in the valuation of its property for the assessment and levy of *ad valorem* taxes for the various taxing authorities statewide. The administrator is required by statute to value the operating property and plant of Mountain Bell as a unit.[8] § 39–1–103(3), 16B C.R.S. (1982); § 39–4–102(1), 16B C.R.S. (1982). Using the factors enumerated in section 39–4–102, 16B C.R.S. (1982 & 1984 Supp.), the administrator determines the actual value of Moun-

valuation of assessment for Mountain Bell to the towns, cities, and special districts within the county.

The Assessor and the ABOE argue to the contrary and suggest that the Administrator should provide the Assessor with the sub-apportionment valuations for taxation purposes by the towns, cities, and special districts, as well as the countywide apportionments. Our review of the record establishes that the BAA and the Administrator did not file post-judgment motions to properly preserve this issue for appellate review. Moreover, the legislature sought to fill this apparent gap in the statutory scheme. *See* § 39–2–109(1)(i), 16B C.R.S. (1984 Supp.). Accordingly, we decline to resolve this institutional dispute in view of the procedural posture of the case and the recently enacted amendatory legislation.

5. *See* § 32–2–103, 13 C.R.S. (1973), *repealed by* ch. 382, sec. 42, §§ 32–2–101 to –134, 1981 Colo. Sess. Laws 1542, 1628. *See also* § 32–1–303, 13 C.R.S. (1984 Supp.). The General Assembly has incorporated many of the repealed provisions of title 32, article 2 into article 1 of the same title. § 32–1–308(1), 13 C.R.S. (1984 Supp.). Citations to new provisions which parallel the repealed provisions will be included for easier reference.

6. *See* § 32–2–108(1), 13 C.R.S. (1973), *repealed by* ch. 382, sec. 42, §§ 32–2–101 to –134, 1981 Colo.Sess. Laws 1542, 1628. *But see* § 32–1–307(1), 13 C.R.S. (1984 Supp.) (exclusion for tracts of land of 40 or more acres used primarily and zoned for agricultural uses), *and* § 32–1–402(1)(a), 13 C.R.S. (1984 Supp.) (exclusions granted under prior law retain their validity under the new statute).

7. The District is authorized by statute to levy and collect *ad valorem* taxes on and against all taxable property within the District. § 32–2–115, 13 C.R.S. (1973) (repealed 1981); § 32–1–1101(1)(a)(III), 13 C.R.S. (1984 Supp.). The statute provides that the district board shall fix the rate of levy after determining the amount of money necessary to be raised by taxation, and certify this rate to the board of county commissioners of each county within the district or having a portion of its territory within the district. The county commissioners shall levy the tax upon the valuation for assessment of all taxable property within the special district. The county officer with authority to collect taxes shall collect the taxes and pay them to the special district ordering the levy and collection. §§ 32–2–116 to –118, 13 C.R.S. (1973) (repealed 1981); §§ 32–1–1201, 1202, 13 C.R.S. (1984 Supp.).

8. Before July 1, 1971, the Colorado Tax Commission was authorized to value public utilities. The statutes were amended in 1970 to create the Division of Property Taxation headed by the Property Tax Administrator. Ch. 90, sec. 1, § 137–3–1, 1970 Colo.Sess. Laws 371.

tain Bell's real and personal property in the state, calculates its value for assessment purposes, and then apportions that valuation among the counties in which Mountain Bell property is located. § 39–4–106(3), 16B C.R.S. (1982). To assist the administrator in this valuation and apportionment, Mountain Bell files a property schedule with the administrator and must make its records available for inspection. § 39–4–103, 104, 16B C.R.S. (1982). The administrator advises Mountain Bell and each county assessor of the amount of valuation for assessment apportioned to each county. The assessor enters that amount on the tax rolls of the county. § 39–4–107, 16B C.R.S. (1982).

The assessor then certifies to each town, city, and special district within the county the total valuation for assessment attributable to taxable property located within the territorial limits of these various taxing authorities.[9] § 39–5–128, 16B C.R.S. (1982). This process necessarily entails a sub-apportionment of Mountain Bell's countywide valuation to the towns, cities, and special districts within the county. To assist the assessors in this sub-apportionment, Mountain Bell provides them with assessed valuations of its property located within each taxing authority. During the tax years in question, Mountain Bell did not advise the Assessor of the valuation for the Zuni property for taxation by the District. It did, however, include a valuation for the Zuni property for taxation by other special districts when there was no question that it was included.

### B.

In 1978, the District filed an action in the Adams County District Court in which it requested that the Assessor be ordered to include the Zuni property in the valuation for assessment certified to the District and to compel Mountain Bell to pay the District taxes attributable to its ownership of the property. *Hyland Hills Metropolitan Park & Recreation District v. Mountain States Telephone & Telegraph Co.*, No. 28927 (Adams County District Court March 10, 1978). Pursuant to its motion, Mountain Bell was dismissed as a party.[10] The court then ordered the Assessor to value and assess the Zuni property. In accordance with the court's directive, the Assessor forwarded to Mountain Bell separate "Notices of Assessed Valuation" on the Zuni property for the years 1969 through 1977 for District tax purposes. Mountain Bell reported to the Assessor the assessed valuation of the Zuni property, but protested the Assessor's action in accordance with the administrative review remedies provided by statute.[11] Mountain Bell claimed that the Administrator had the exclusive authority under the statute to value and assess the property of a public utility, and that the property was exempt from taxation pursuant to the exclusion provision in title 32 governing organization of special districts and the 1955 court order creating the District.

The Assessor rejected Mountain Bell's protest.[12] Mountain Bell then appealed to the ABOE,[13] which denied the appeal and ratified the assessed valuation fixed by the

---

**9.** This valuation provides the governing boards of the special districts with their tax bases. By determining the amount of money to be raised by taxation, the board can then calculate the district's rate of levy. *See, supra* note 7.

**10.** The trial judge to whom the case was assigned apparently concluded that the District had not exhausted its administrative remedies and there was no justiciable controversy since Mountain Bell could not assess taxes on its own property and because the Assessor had not assessed Mountain Bell for any taxes due the District. The Administrator was dismissed as a party to the case at an earlier date for reasons not disclosed or apparent from the record.

**11.** *See* ch. 494, sec. 16, § 39–5–122, 1977 Colo. Sess. Laws 1728, 1735.

**12.** The denial stated: "The taxpayer has no dispute as to valuation of the property; only as to whether the property is taxable at all. The assessor has placed this property on the tax rolls per order of court in case number 28927, District Court of Adams County."

**13.** Mountain Bell's appeal was filed pursuant to ch. 416, sec. 2, § 137–8–4, 1973 Colo.Sess. Laws 1441, 1441–43.

Assessor. Mountain Bell next appealed to the BAA.[14] The BAA found that there was no dispute over the valuation assigned to the Zuni property by the Assessor and that there was no dispute concerning the unit valuation of the utility by the Administrator, but that Mountain Bell had failed to apply for an exemption from the Administrator. The BAA, in dismissing the appeal, concluded that it did not have authority to exempt the Zuni property from the District without prior action by the Administrator.[15]

On October 25, 1978, Mountain Bell sought judicial review of the BAA's decision as permitted by statute.[16] Mountain Bell advanced three arguments: (1) The Assessor exceeded his jurisdiction when he assessed the Zuni property, and thus, the BAA's decision was based on erroneous findings, was not supported by the evidence, and was arbitrary, capricious, and constituted an abuse of discretion. (2) The actions by the Assessor, the ABOE, and the BAA unconstitutionally deprived Mountain Bell of its property without due process and violated its equal protection rights. (3) Mountain Bell was entitled to a declaratory judgment that the Zuni property was excluded from the district for *ad valorem* tax purposes for the years 1969 through 1977.

The district court entered its order on January 14, 1982, and issued an amended order on July 12, 1982.[17] The court held that the Assessor did not have authority to assess Mountain Bell's property because the statute provides that the Administrator has exclusive jurisdiction to value and assess the property of public utilities; therefore, the ABOE and the BAA erred in denying and dismissing Mountain Bell's appeals. The court also held that Mountain Bell's after-acquired property, including the Zuni property, should be included in the District for the years 1969 through 1977 for *ad valorem* tax purposes, and that Mountain Bell's constitutional rights would not be violated if this property were taxed by the District.[18] The court ordered the Administrator to determine the value of the Zuni property for the years 1969 through 1977, and directed the Assessor to assess and collect the taxes due for those years.

Mountain Bell filed its appeal in this court seeking reversal of the district court's order to include the Zuni property

14. *See* ch. 90, sec. 23, § 137–8–6, 1970 Colo.Sess. Laws 371, 386.

15. Presumably, the BAA was referring to its authority to hear appeals from determinations by the administrator concerning applications for exemptions submitted pursuant to section 39–2–117(5), 16B C.R.S. (1982). However, this statutory provision refers only to the administrator's authority to grant exemptions for property used for religious worship, not-for-profit schools, and various charitable purposes. *See* § 39–3–101(1)(e) to (1)(g), 16B C.R.S. (1982 & 1984 Supp.).

16. Ch. 494, sec. 19, § 39–8–108(2), 1977 Colo. Sess. Laws 1728, 1736.

17. The amended order was prompted by the District's motion to alter or amend the judgment. In its motion, the District requested that the court order the Administrator to advise the Assessor of the value of the Zuni property and to order the Assessor to include the value of the Zuni property on the Adams County abstract of assessment for District *ad valorem* tax purposes. The January 14, 1982, order was amended to include the following provision:

Therefore, it is the Order of this Court that the state property tax administrator shall determine the value of the Zuni property of Mountain Bell for tax purposes for the years 1969 thru 1977. Further, that the Assessor for Adams County shall assess and collect the taxes due for the years 1969 thru 1977.
*Mountain States Telephone & Telegraph Co. v. Board of Assessment Appeals*, No. 32941 (Adams County District Court July 12, 1982).

18. The district court found that the administrative boards lacked authority to decide whether the Zuni property should be excluded from the District, and held that the court was the appropriate forum to resolve this issue. The court cited section 32–2–108(1), 13 C.R.S. (1973), as authority to rule on the exclusion issue. However, this provision was repealed in ch. 382, ch. 42, §§ 32–2–101 to –134, 1981 Colo.Sess. Laws 1542, 1628. A similar exclusion provision, section 32–1–307, 13 C.R.S. (1984 Supp.), was enacted by the legislature in 1981. The new statute not only provides that an owner of property may petition the district court for a ruling that the property should be excluded from the district, but also permits a special district to petition the court for an order to include property that has undergone a change in use or zoning.

in the District. Mountain Bell contends that it was error for the trial court to order the property included in the District and alleges that the exclusion provision, as construed by the district court, is unconstitutional.[19]

## II.

Mountain Bell alleges that the Zuni property, which was acquired in 1968, is excluded from the District for taxation purposes by the 1955 district court order creating the District. In its 1955 order, the district court excluded Mountain Bell property from the District pursuant to the following statutory provision:

> Any provision to the contrary notwithstanding, no tract or parcel of real estate used for manufacturing, mining, railroad or industrial purposes, which, together with the buildings, improvements, machinery and equipment thereon situated, shall have an assessed valuation in excess of twenty-five thousand dollars at the date of filing the petition mentioned in section 4, ... shall be included in any district organized under this act without the written consent of the owners thereof.

Ch. 199, sec. 8, § 89–12–1, 1955 Colo.Sess. Laws 563, 567–68.

We construed this statute in *Gates Rubber Co. v. South Suburban Metropolitan Recreation & Park District*, 183 Colo. 222, 516 P.2d 436 (1973). Gates purchased a parcel of land that previously had been excluded from a special district pursuant to the exclusion provision because it was primarily used for agricultural purposes. After purchasing the land, Gates constructed a large manufacturing plant on the property that was valued in excess of $25,000. When the district sought to have the property assessed and taxed, Gates filed an action requesting that the property be excluded from the district pursuant to the exclusionary provision. This court held that the provision was only a "grandfather

clause" designed to preserve and protect those interests in existence at the time of the legislative enactment. We concluded that the after-acquired property, although converted to a manufacturing use, was not excluded under the statute.

This construction is supported by the statutory language which provides that, "no tract or parcel of real estate used for manufacturing, mining, railroad or industrial purposes, which, ... shall have an assessed valuation in excess of twenty-five thousand dollars *at the date of filing the petition mentioned in section 4,* ... shall be included in any district organized under this act without the written consent of the owners thereof." (Emphasis added.)

Here, the Zuni property was acquired thirteen years after the initial exclusion of other Mountain Bell property in the 1955 court order creating the District. Under *Gates*, this after-acquired property may not be excluded from the District but is subject to taxation for the benefit of the District.

Mountain Bell argues, however, that *Gates* does not control the result in this case. It contends that our rationale in *Gates* was predicated on the fact that the property in that case, because it was not owned by a public utility, was valued and assessed locally on a situs basis by each county assessor and, therefore, any after-acquired parcel of land also could be valued and assessed separately on a situs basis. Mountain Bell concludes that applying *Gates* to a public utility subjects the utility's after-acquired land to a situs-based valuation and assessment which is contrary to the statutory procedure for valuing and assessing utilities as a unit. Mountain Bell further asserts that singling out the Zuni property for a situs-based valuation and assessment for District taxation purposes for the years 1969 through 1977 violates article X, section 3 of the Colorado Constitution and the equal protection clause of

---

19. This latter allegation forms the basis for this court's appellate jurisdiction. *See* § 13–4–

102(1)(b), 6 C.R.S. (1973).

the fourteenth amendment to the United States Constitution.[20]

Finally, Mountain Bell argues that because the legislature intended public utilities to be valued and assessed as a unit, the Zuni property must be treated as a part of the Mountain Bell unit which was excluded by the 1955 court order and, therefore, the Zuni property should also be excluded.

We reject Mountain Bell's premise that including the Zuni property in the District for tax purposes requires a situs-based valuation and assessment. Therefore, we do not agree with its argument that the trial court's decision is contrary to the statutory scheme or constitutional requirements.

Mountain Bell does not dispute the unit valuation of its property for the years 1969 through 1977 as calculated by the Administrator. Nor has it expressed any disagreement with the Administrator's statewide valuation for assessment purposes or the Adams County apportionment of that valuation. Mountain Bell's complaint relates only to the fact of the Assessor's final sub-apportionment of this countywide valuation to the District, a sub-apportionment in which it participates. Mountain Bell admits that it provides the Assessor with the necessary information to fairly sub-apportion the countywide valuation to the towns, cities, and special districts in accordance with the taxable property located within these various taxing authorities. It also admits that it has placed an assessed valuation on the Zuni property for sub-apportionment to other taxing authorities where there was no question that the property

was taxable. Including the Zuni property in the District for tax purposes is consistent with this procedure.

We hold that the district court's order directing the Administrator to place a value on the Zuni property which will assist the Assessor in determining what percentage of the countywide apportionment should have been allocated to the District for assessment and levy for the years 1969 through 1977 does not constitute an impermissible situs-based valuation. Nor does the order violate Mountain Bell's rights under the equal protection clause of the fourteenth amendment to the United States Constitution or the uniformity clause of the Colorado Constitution. The order does not require a second method of valuing and assessing utility property, and no further classification of public utility property is created; therefore, these constitutional rights are not implicated. *See Union Pacific Railroad Co. v. Hanna*, 73 Colo. 162, 173, 214 P. 550, 555 (1923) ("Discrimination applies to cases where there has been a lack of uniformity, or where the assessment is more favorable to one taxpayer than to another, the estates taxed being of the same or similar character."). The court order provides a procedure by which the amount of back taxes owed to the District by virtue of the location of the Zuni property can be established and paid by Mountain Bell. The order is wholly consistent with *Gates* and complies with the statutory procedure and administrative practice of valuing and assessing public utilities, and apportioning and sub-apportioning that valua-

---

**20.** Article X, section 3 of the Colorado Constitution, which is known as the uniformity clause, provides:

All taxes shall be uniform upon each of the various classes of real and personal property located within the territorial limits of the authority levying the tax, and shall be levied, assessed, and collected under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of taxes upon all property, real and personal, located within the territorial limits of the authority levying the tax; provided, however, that the general assembly may, by law, exempt from taxation household furnishings and personal effects

which are not used for the production of income at any time.

In *City & County of Denver v. Lewin*, 106 Colo. 331, 105 P.2d 854 (1940), this court held that the constitution requires that the same means and methods of valuation and assessment be uniformly and impartially applied to all property in the same class, so that taxes operate equally and uniformly upon all persons and corporations in similar circumstances. Mountain Bell argues that under the uniformity clause, it is unconstitutional to require the Zuni property to be valued on a situs basis for Hyland Hills District tax purposes while the entire untility is valued as a unit. .

tion to the various taxing authorities in the state. We, therefore, affirm the judgment of the district court.

ROVIRA and QUINN, JJ., do not participate.