**HYLAND HILLS PARK AND RECREATION DISTRICT, ADAMS COUNTY, Colorado, Petitioner,**

v.

**The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a Delaware Corporation, Respondent.**

**No. 92SC843.**

Supreme Court of Colorado, En Banc.

Dec. 13, 1993.

Richard L. Fuller, Federal Heights, for petitioner.

Kathleen M. Snead, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *Hyland Hills Park & Recreation District v. Denver & Rio Grande Western Railroad Co.*, 850 P.2d 155 (Colo.App.1992).

Petitioner Hyland Hills Park and Recreation District (Hyland Hills) is a quasi-municipal corporation and governmental subdivision of the State of Colorado created in 1955 pursuant to the 1955 Metropolitan Recreation District Act (MRDA). The MRDA initially exempted certain types of properties from inclusion in a district, including property used for railroad purposes. The MRDA was amended and the automatic exemption of property used for railroad purposes was removed. As a result of this amendment, Hyland Hills began the necessary proceedings to include certain property owned by the respondent, The Denver and Rio Grande Western Railroad Co. (Rio Grande), in Hyland Hills. Rio Grande contested the inclusion asserting that the MRDA required a property owner's written consent before previously excluded property could be included and that Rio Grande had not consented to the inclusion.

The district court entered judgment in favor of Hyland Hills and determined that the statutory provision, which required written consent of a property owner, did not apply to the dispute between Hyland Hills and Rio Grande. The court of appeals reversed, holding that the statute did apply, and therefore, Rio Grande's written consent was required to include its property within Hyland Hills. Hyland Hills sought and we granted certiorari to determine whether the court of appeals erred in holding that written consent was required to include Rio Grande's property. We affirm in part, reverse in part, and return this case to the court of appeals with directions to remand to the district court for a further hearing in accordance with this opinion.

I

Hyland Hills was created in 1955 pursuant to the MRDA. Act approved April 9, 1955, ch. 199, § 1, 1955 Colo.Sess.Laws 563. Rio Grande owned land located within Hyland Hills which was specifically excluded from inclusion within the district by the following section of the MRDA:

Exclusion proviso—Any provision to the contrary notwithstanding, no tract or parcel of real estate used for manufacturing, mining, railroad or industrial purposes, which, together with the buildings, improvements, machinery and equipment thereon situated, shall have an assessed valuation in excess of twenty-five thousand dollars at the date of filing the petition mentioned in section 4, or any tract of farm or ranch land of forty acres or more used primarily for agricultural purposes, shall be included in any district organized under this act without the written consent of the owners thereof.

Ch. 199, § 89–12–8, 1955 Colo.Sess.Laws 563, 567–68. Rio Grande has only used the land for railroad purposes and thus the property was subject to the exclusion proviso and was not included within Hyland Hills.

The MRDA also provided a mechanism for including property in a district that would otherwise be subject to exclusion. The inclusion provision of the MRDA stated:

Nothing in this section shall be deemed to permit the inclusion in a district of any property which could not be included in the district at the time of its organization without the written consent of the owners thereof unless the owners of such property shall consent in writing to the inclusion of such property in the district as prayed in said petition.

Ch. 199, § 89–12–21, 1955 Colo.Sess.Laws 563, 574. Rio Grande never gave its written consent to have its property included in Hyland Hills.

In 1961, the General Assembly amended the exclusion proviso of the MRDA. The purpose of the modification was to permit inclusion of almost all land within the geographical boundaries of a district. This would result in more property owners who would be required to pay certain obligations, including taxes, for services provided by the districts. *Denver & Rio Grande Western Railroad Co.*, 850 P.2d at 156. The General Assembly added a second paragraph to the exclusion proviso eliminating the exclusion of property that was originally used for agriculture but was subsequently used for some other purpose. The addition to the exclusion proviso stated:

(2) In the event that the use of any tract of farm or ranch land of forty acres or more lying within the boundaries of any metropolitan recreation and/or park district ... has or will be changed from that of "agricultural lands" ... then such lands and the personal property thereon shall no longer be excluded from said district and, after due notice by the board of directors of the Metropolitan Recreation District to the property owner, with right of a hearing for said property owner within a ten day period, shall be subject to all obligations, liens, or charges of said district from January 1 of the year following such change in use.

Ch. 176, § 89–12–8(2), 1961 Colo.Sess.Laws 529, 530.

In 1975, the exclusion proviso of the MRDA was modified again. In the 1975 version, all references to exclusions from the district were removed except for the exclusion of farm or ranch land of forty acres or more used primarily for agricultural purposes. Ch. 283, § 32–2–108(1), 1975 Colo.Sess.Laws 1291.[1] Due to the 1975 amendment, only large parcels of agricultural land were specifically excluded from a district. The 1975 version of the MRDA also provided that property, which could not have been included in the district at the time of the district's organization, could not be included now without the written consent of the owner. Ch. 283, § 32–2–108(1), 1975 Colo.Sess.Laws 1291.

In 1981, the General Assembly repealed the MRDA and enacted a different version entitled the Special District Act. Ch. 382, §§ 32–1–101 to 42–4–1212, 1981 Colo.Sess. Laws 1542. Under the Special District Act, two new subsections were added to the two prior subsections of the exclusion proviso. These two new subsections allowed for the inclusion of farm or ranch land into a special district if the property in question was no longer used as farm or ranch land or if the zoning of the property had changed.[2] Ch. 382, § 32–1–307, 1981 Colo.Sess.Laws 1542, 1555.

The inclusion provision was also changed by the Special District Act and now states:

> Nothing in this part 4 shall permit the inclusion in a district of any property which could not be included in the district at the time of its organization without the written consent of the owners thereof, unless the owners of such property shall consent in writing to the inclusion of such property in the district as prayed for in said petition or unless such property is no longer excludable pursuant to the provisions of Section 31–1–307(2).

§ 32–1–401(2)(f), 13 C.R.S. (1993 Supp.); *see also* ch. 382, § 32–1–402, 1981 Colo.

Sess.Laws 1542, 1558 (stating prior version).

In March 1989, the Hyland Hills Board of Directors held a hearing to address the inclusion of various parcels of property, including the property owned by Rio Grande. Rio Grande protested the inclusion of its property. Following the hearing, the Board of Directors formally voted to petition the district court to terminate the exclusion of Rio Grande's property and to include Rio Grande's property within Hyland Hills for all purposes, including taxation.

In May 1989, the Board of Directors filed a petition for inclusion of Rio Grande's property within Hyland Hills. Hyland Hills asserted that the inclusion was allowed by the amendments to the exclusion proviso in section 32–1–307, 13 C.R.S. (1993 Supp.). On September 13, 1990, the district court held a hearing on the petition and entered judgment including Rio Grande's property within Hyland Hills. The district court determined that the inclusion and written consent provisions contained in section 32–1–401(2)(f), 13 C.R.S. (1993 Supp.), did not apply and thus did not bar inclusion.

The court of appeals reversed and held that the provisions for inclusion set forth in section 32–1–401(2)(f) did apply. *Denver & Rio Grande Western Railroad Co.,* 850 P.2d at 158. The court interpreted the Special District Act and held that only a change from agricultural use or re-zoning creates an automatic inclusion absent the owner's written consent. *Id.* The court also held that the deletion of the reference to railroads in the exclusion proviso did not mean that railroad properties should be automatically included within the district. *Id.*

The primary issues are whether the exclusion proviso revoked existing exclusions of railroad property lying within the boundaries of Hyland Hills and whether the court of appeals erred in not distinguishing, for the purposes of the consent requirement, parcels of Rio Grande's property that were

---

**1.** In 1973, the MRDA was re-organized and re-numbered. At that time, no amendments were made to either the exclusion proviso or the inclusion provision.

**2.** Recodified at § 32–1–307, 13 C.R.S. (1993 Supp.).

either acquired, or reacquired, after 1975. We affirm the court of appeals holding that the written consent of Rio Grande is required before Hyland Hills can include Rio Grande's property acquired before 1975 within the district.[3] We return this case to the court of appeals with directions to remand to the district court for a further hearing to determine whether the written consent of Rio Grande is necessary before portions of property acquired or reacquired by Rio Grande after 1975 can be included within Hyland Hills.

## II

■ In 1975, when the General Assembly deleted the portion of the exclusion proviso which excluded railroad uses from possible inclusion within a district, the legislature did so to generate more revenue. It is well within the power of the General Assembly to create tax exemptions and to remove the exemptions in its discretion. *See Anderson Ranch Arts Found. v. Property Tax Adm'r*, 729 P.2d 992 (Colo. App.1986) (stating that the General Assembly may further limit, modify, or abolish tax exemptions at its will). This appeal is not about the ability of the State of Colorado to levy taxes as Hyland Hills asserts. The issue is whether the plain meaning of the applicable statutory provisions indicates that consent is required to include originally excluded property.[4]

As the court of appeals noted, section 32–1–401(2)(f) sets forth only two ways in which previously excluded property can later be included within a district—inclusion without consent is permitted if the property has changed from agricultural use to a different use or if the property has been rezoned; for all other property consent of the owners is required. *Denver & Rio Grande Western Railroad Co.*, 850 P.2d at 157. Rio Grande has always used its property for railroad purposes and thus the property cannot be classified as agricultural.[5] The property was originally excluded when Hyland Hills was formed in 1955, and consent of the Rio Grande is required in order to include its property within Hyland Hills.

The fact that the 1975 amendment to the MRDA deleted railroad property from the exclusion proviso does not alter our conclusion because the inclusion provision was not amended. The inclusion provision of the MRDA and the Special District Act require that property within a district may not be included in a district if, at time of the district's organization, that property was exempt, or certain other conditions are not met. *See* MRDA, ch. 199, § 89–12–21, 1955 Colo.Sess.Laws 563, 574; Special District Act, § 32–1–401(2)(f), 13 C.R.S. (1993 Supp.). When the MRDA was revised, reorganized and renumbered, the inclusion provision remained intact.[6]

■ Hyland Hills contends that the inclusion provision contained in section 32–1–401(2)(f) is inapplicable to this case. Section 32–1–401(2)(f) states that *"[n]othing in this part 4 shall permit the inclusion*

---

**3.** Hyland Hills also asserts that the decision in *Denver and Rio Grande Western Railroad Co.* which we now affirm, is in direct conflict with the court of appeals decision in *Hyland Hills Park and Recreation District v. Lincoln Hunters' Cove*, No. 89CA0212 (Colo.App. May 10, 1990) (opinion not selected for publication). *Lincoln Hunters' Cove* is distinguishable from the instant case.

In *Lincoln Hunters' Cove*, property was initially excluded from the special district on the basis of an industrial exclusion. In 1962, the use of the property changed from an industrial use to a non-excluded zoning. Subsequent to the change in zoning, the special district initiated inclusion proceedings. The court of appeals held that the land could be included pursuant to section 32–1–307, 13 C.R.S. (1993 Supp.). *Lincoln Hunters' Cove*, slip op. at 5. The court of appeals specifically declined to address the issue of the effect of the 1975 amendment to the exclusion proviso. *Id.* Because *Lincoln Hunters' Cove* addresses the impact of a change in zoning and the present case does not, *Lincoln Hunters' Cove* is distinguishable.

**4.** Senator McManus, the sponsor of the amendment to the exclusion proviso, addressed the Senate Committee on Local Government on January 28, 1975, stating specifically that the exclusion proviso is a loophole.

**5.** *But see infra*, part III.

**6.** Although the current version of the inclusion provision is found within the section relating to districts formed by citizen petitions, the original version was a general inclusion provision.

in a district of any property which could not be included in a district at the time of its organization without the written consent of the owners...." (Emphasis added.) Hyland Hills asserts that "part 4" applies only to districts formed by citizen petition to annex property previously outside of the boundaries of the district. Because Rio Grande's property was not annexed, Hyland Hills claims, it is not subject to section 32–1–401(2)(f) and consent is not required for inclusion within the district.

The plain meaning of the statute indicates consent is required to include property. If the inclusion provision required written consent only for property that was annexed by a district, railroad property located outside the boundaries of an existing district and later annexed would be excluded from the district, while railroad property already located within the boundaries of an existing district and previously excluded could be included. We see no reason for this distinction. If the legislature had intended to close the railroad's tax exemption entirely, as Hyland Hills suggests, the General Assembly also would have removed the language in section 32–1–401(2)(f) which prohibits the inclusion of property that could not be included at the time of the district's organization.

■ The legislative intent behind the 1975 amendment does not alter the analysis of this issue. As Hyland Hills correctly points out, transcripts from the January 28 and 30, 1975, Senate Committee on Local Government and the April 14, 1975, House Committee on Local Government hearings indicate that the 1975 amendment to the exclusion proviso was added to eliminate a tax exemption.[7] According to Senator McManus, the amendment's sponsor:

> [Special Districts] have been hit by inflation as everyone else has and it seems to us that it is time that those exempted, with the exception of agricultural and you'll notice that this was not touched, those that have been exempted, its time that they pay their fair share in the recreation districts as they have in every other district....

Similarly, Representative Orton, the House sponsor of the bill, stated: "What we are asking for is simply a fair taxation. We feel very strongly there should be no more of this escape clause for ... those located in those metropolitan recreation districts."

■ Although the legislative statements indicate a desire to terminate a tax exemption, the unambiguous language of section 32–1–401(2)(f) does not permit inclusion without the written consent of the owners of the originally excluded property. Therefore, despite the ambiguous statements that comprise most of the legislative history, the plain meaning of the statute is dispositive.[8] *See Thiret v. Kautzky*, 792 P.2d 801 (Colo.1990); *People v. Armstrong*, 720 P.2d 165 (Colo.1986). We therefore affirm the court of appeals holding that section 32–1–401(2)(f) applies and that the written consent of Rio Grande is required before its railroad property can be included in Hyland Hills.

### III

■ Rio Grande owns four distinct types of property located within Hyland Hills: (1) property acquired before Hyland Hills was formed; (2) improvements on land acquired

---

7. Contemporaneous statements of individual legislators made on committee hearings are relevant as an indication of legislative intent. *Archer Daniels Midland Co. v. State*, 690 P.2d 177 (Colo.1984).

8. Even if the plain language of the statute and the legislative history created an unresolvable ambiguity with respect to the 1975 amendment, the General Assembly can not retroactively terminate this exemption without an express statement. *See* § 2–4–202, 1B C.R.S. (1980) ("A statute is presumed to be prospective in its operation."); *see also Riley v. People*, 828 P.2d 254,

257 (Colo.1992) (stating that legislation is presumed to have prospective effect unless contrary intent is expressed by the General Assembly); *California Co. v. State*, 141 Colo. 288, 320, 348 P.2d 382, 399 (1959) (stating that all statutes shall be construed prospectively unless the contrary interpretation is manifest); *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1069 (D.Colo. 1985) (holding that there is a presumption against retroactive application of statutes). There was no such express statement in this case.

before Hyland Hills was formed; (3) property acquired before Hyland Hills was formed, sold after it was formed, and reacquired after the 1975 amendment; and (4) property acquired after Hyland Hills was formed, but which, due to its prior ownership, was never included in the original district. The parties stipulated that certain portions of the parcels owned by Rio Grande were acquired or sold and then reacquired after 1975. The stipulation states that these parcels were never formally included in Hyland Hills but the record does not indicate why the parcels were not originally included. Although Rio Grande noted the distinction in its brief to the court of appeals, the classifications were not addressed in the court of appeals analysis.[9]

We hold that section 32–1–401(2)(f) applies and requires the written consent of Rio Grande for inclusion in Hyland Hills regarding property that was owned by Rio Grande at the time of the formation of Hyland Hills and has remained in Rio Grande's continuous ownership. The record is unclear on certain crucial points, however, regarding property that was either reacquired by Rio Grande after the 1975 amendment or property that was acquired after the formation of the district.

Determination of the use of the property Rio Grande acquired before Hyland Hills was formed, sold after it was formed, and reacquired after the 1975 amendment, is necessary to properly apply the inclusion provision. If this portion of Rio Grande's current property was subsequently used for a non-excludable use, the change in use may be grounds for inclusion. *See Front Range Partners v. Hyland Hills Metro. Park & Recreation Dist.*, 706 P.2d 1279 (Colo.1985) (holding that property which was formerly used for agriculture but is subsequently used for some other purpose is includable). The trial court is required to make a specific determination of whether this type of property can be included without the written consent of Rio Grande.

Similarly, regarding property acquired after Hyland Hills was formed, but which, due to its prior ownership, was never included in the original district, the prior use is of the utmost importance. The prior use is essential inasmuch as section 32–1–401(2)(f) prohibits the inclusion of property "which could not be included in the district at the time of its organization." If the property was formerly agricultural, then the property may be included. *See Front Range Partners*, 706 P.2d at 1279; *Gates Rubber Co. v. South Suburban Metro. Recreation & Park Dist.*, 183 Colo. 222, 516 P.2d 436 (1973). If the property was used other than for railroad purposes, a change in use may warrant inclusion without consent. *Front Range Partners*, 706 P.2d at 1279. Finally, if the property was used for railroad purposes, *Gates Rubber Co.* may still control and allow inclusion of all after-acquired property, regardless of the former use. *Gates Rubber Co.*, 183 Colo. at 222, 516 P.2d at 436 (holding that including after-acquired property is not unconstitutional); *Mountain States Tel. & Tel. Co. v. Board of Assessment Appeals*, 696 P.2d 326 (Colo.1985) (stating that after-acquired property which had previously been included, but later changed to an excluded use, was still subject to inclusion).

Because we cannot determine the past use of current Rio Grande property, and such use may be material to its inclusion within Hyland Hills, we return this case to the court of appeals for remand to the district court for a further hearing to resolve the issue.

## IV

Accordingly, we affirm in part and reverse in part. We affirm the court of

---

**9.** The issue was not well-briefed before this court, nor was it seriously discussed at the district court level. Counsel for both parties raised the issue on certiorari and briefly discussed it during oral arguments before this court. Although we have held that issues not raised at the trial court level cannot form the basis for an appeal, *see, e.g., Paine, Webber, Jackson & Cur-* *tis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo.1986), it is within our discretion to address certain defenses. C.A.R. 1(d). We merely address and return this issue to the court of appeals to remand to the district court for further findings rather than resolving the question. Additionally, this issue is not the basis for the appeal, but rather only one integral part of it.

appeals interpretation of the Special District Act, reverse the judgment, and return this case to the court of appeals with directions to remand to the district court for a further hearing to determine the prior use of property currently owned by Rio Grande and that was either acquired or reacquired by Rio Grande after 1975, and for entry of judgment consistent with this opinion.