The PEOPLE of the State of
Colorado, Petitioner,

v.

Mark E. ROCKWELL, Respondent.

No. 04SC584.

Supreme Court of Colorado,
En Banc.

Nov. 15, 2005.

John W. Suthers, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, for Petitioner.

E. Scott Baroway, Englewood, for Respondent.

MARTINEZ, Justice.

In this opinion, we address Mark Rockwell's claim that his sentence was illegal because it included mandatory parole. Ultimately, we reject Rockwell's argument that he could not be sentenced to mandatory parole because the "factual basis" for his conviction met the statutory requirement of section 17–2–201(5)(a), C.R.S. (2005), in that it "involved an offense involving unlawful sexual behavior."

Rockwell pled guilty to second-degree burglary with the intent to harass stemming from an incident that occurred in 1993. The trial court accepted Rockwell's guilty plea in 1994 and deferred his judgment of conviction and sentence. After Rockwell failed to comply with the required terms and conditions, the trial court revoked Rockwell's deferred judgment and sentence in 1996. Rockwell then failed to comply with the conditions of his probation and the trial court sentenced him to six years in the Department of Corrections and three years of mandatory parole in 2000.

In response, Rockwell brought a Motion to Correct an Illegal Sentence under Criminal Procedure Rule 35(a) alleging he was illegally sentenced to mandatory parole and instead is subject to the discretionary parole provision of section 17–2–201(5)(a). The legislature established two separate parole systems for individuals convicted of felonies occurring between 1993 and 1996. *Martin v. People*, 27 P.3d 846, 863 (Colo.2001). Most felonious offenders receive a sentence to incarceration and a period of mandatory parole. § 18–1–105, C.R.S. (1999). However, individuals convicted of (1) a sexual offense or (2) a crime with a "factual basis" of unlawful sexual behavior receive a sentence to a period of incarceration during which the parole board may grant discretionary parole. § 17–2–201(5)(a); *People v. Norton*, 63 P.3d 339, 347 (Colo.2003). Second-degree burglary with the intent to harass is not a sexual offense. Rockwell claims that the factual basis for his plea to second-degree burglary with the intent to harass "involved an offense involving unlawful sexual behavior" and, therefore, the trial court unlawfully sentenced him to mandatory parole. The trial court summarily denied Rockwell's motion.

The court of appeals reversed the judgment of the trial court and remanded for further factual findings. *People v. Rockwell*, 104 P.3d 900, 903 (Colo.App.2003) (modified on denial of reh'g, Apr. 29, 2004). The court of appeals directed the trial court to determine whether an unlawful sexual behavior factual basis for Rockwell's conviction existed based on statements made by the defendant, statements by the prosecutor, and the presentence report. *Id.* The trial court was directed to vacate Rockwell's mandatory parole sentence if a factual basis for unlawful sexual behavior could be found from those sources. *Id.* The People petitioned for certiorari to review the court of appeals' holding.

We reverse the court of appeals and remand with directions to affirm the order of the trial court denying Rockwell's motion.

## I. Facts and Procedural History

On September 9, 1993, Rockwell broke into the victim's home. While the victim slept, Rockwell entered her basement bedroom. Rockwell gave two versions of what occurred in the victim's bedroom. Rockwell originally alleged he merely pushed the victim's shoulder to wake her up. After his conviction, he

admitted to lying down beside her and touching her vaginal area. In both versions, Rockwell said he exited the house when the victim woke up. Rockwell was charged with second-degree burglary and third-degree sexual assault. The burglary charge specified that Rockwell entered the home with the intent to commit a third-degree sexual assault.

In April of 1994, Rockwell pled guilty to second-degree burglary with the intent to harass. Pursuant to the plea agreement, the trial court dismissed the third-degree sexual assault charge. The burglary charge was amended to remove any allegation that Rockwell had entered the victim's home to commit a third-degree sexual assault and instead stated that he had entered with the intent to commit harassment.

The elements in the amended information lacked any mention of illegal sexual contact. Instead, the elements related exclusively to the second-degree burglary with the intent to harass charge. During the providency hearing, the prosecution read the amended information to Rockwell with an explanation of the elements:

> On or about September the 9th of 1993; that this happened here in Douglas County in the state of Colorado; that you Mark Edward Rockwell were the person that committed the act; and that you did unlawfully, feloniously, and knowingly break an entrance into and enter and remain unlawfully in the dwelling of [the victim] and that you did when you broke an entrance into and entered and remained unlawfully in the dwelling you had the intent to commit therein the crime of harassment . . . it was your intent to harass and annoy or alarm another person by striking, shoving, kicking, or otherwise touching.

Rockwell pled guilty to this statement of the elements of second-degree burglary with the intent to harass.

At no time during the providency hearing did Rockwell admit to any type of unlawful sexual conduct, nor did the trial court ask either the prosecution or Rockwell to address the underlying factual basis for the burglary charge. Although the trial court stated in a written order that a "factual basis exist[ed] for the entry of the plea," the court did not specifically find particular facts to support that conclusion.

The trial court accepted Rockwell's guilty plea to second-degree burglary with the intent to harass and deferred his judgment and sentence for a two-year period. The deferred judgment was contingent on Rockwell's compliance with specific terms and conditions agreed to by the parties in the plea agreement. The trial court imposed conditions requiring that Rockwell pay court costs [1]; abstain from drugs and excessive alcohol consumption; and avoid contact with the victim. Of greater interest to the issue at hand, the trial court also ordered Rockwell to obtain "offense specific treatment" as required by the Probation Department. Subsequently, the Probation Department recommended that Rockwell participate in a sex offender treatment program.

In 1996, the trial court revoked Rockwell's deferred judgment and entered a conviction against him for failure to complete "offense specific treatment" as ordered by the Probation Department. The court imposed a four-year period of probation with conditions essentially identical to the terms of his deferred judgment. Thereafter, Rockwell repeatedly violated the conditions of his probation by failing to complete treatment. In April of 2000, the trial court revoked his probation and resentenced him to a period of six years in the Department of Corrections. The trial court also imposed three years of mandatory parole.

On July 12, 2002, Rockwell filed a Motion to Correct an Illegal Sentence under Colorado Rule of Criminal Procedure 35(a). He alleged that because his crime involved an underlying factual basis of unlawful sexual behavior, he was entitled to a period of imprisonment that included the possibility of discretionary parole instead of a period of imprisonment plus three years of mandatory

---

1. The trial court imposed court and supervision costs. Rockwell was not required to pay a sex offender surcharge.

parole. The trial court summarily denied Rockwell's motion because "[t]he defendant did not plead guilty to a sexual offense; likewise, his sentence was for the second-degree burglary charge, as amended."

The court of appeals observed that some "evidence" in the presentence report supported a factual basis for an offense involving unlawful sexual behavior, but vacated the trial court's order and remanded the case for more factual findings. *Rockwell*, 104 P.3d at 903. The court of appeals directed the trial court to determine whether a factual basis for unlawful sexual behavior existed in Rockwell's case after reviewing the record as a whole. *Id.* Specifically, the court of appeals directed the trial court to review statements made by the defendant, statements made by the prosecution, and findings in the presentence report. *Id.* If such a factual basis existed, the trial court was instructed to sentence Rockwell to a period of incarceration from which the parole board would have the sole authority to grant or withhold discretionary parole pursuant to section 17–2–201(5)(a). *Id.; see Norton*, 63 P.3d at 347.

We granted certiorari and now reverse the judgment of the court of appeals and remand for proceedings consistent with this opinion.[2]

## II. Illegal Sentence Claim

■ As a preliminary matter, we consider the People's argument that Rockwell makes a Crim.P. 35(c) motion challenging the underlying factual basis for his guilty plea, which would be time barred. The People claim that Rockwell's motion challenges the validity of his guilty plea due to a lack of a supporting factual basis for the charge. Rockwell instead characterizes his motion as a Crim.P. 35(a) motion for relief from an illegal sentence. Rockwell alleges his mandatory parole sentence was illegal because he was convicted of a crime with an underlying factual basis of unlawful sexual behavior. As such, he should have been sentenced to discretionary parole pursuant to section 17–2–201(5)(a), C.R.S. (2005).[3] We hold that Rockwell's claim is properly brought under Crim.P. 35(a).

### A.

■ A defendant may challenge the imposition of an illegal sentence under Crim.P. 35(a). Sentences that are inconsistent with the statutory scheme outlined by the legislature are illegal. *People v. Dist. Court*, 673 P.2d 991, 995 (Colo.1983). "Allegations that a particular sentence is void or illegal require an inquiry into the subject matter jurisdiction of a court and may not be waived." *Downing v. People*, 895 P.2d 1046, 1050 (Colo.1995). Thus, questions of the trial court's authority to issue a particular sentence are properly brought in a Crim.P. 35(a) motion. Under Crim.P. 35(a), a court may correct an illegal sentence at any time. *Id.* Indeed, a trial court has the right and the duty to set aside an illegal sentence. Crim.P. 35(a); *People v. Emig*, 177 Colo. 174, 177, 493 P.2d 368, 369 (1972).

In contrast, Crim.P. 35(c) permits motions for post-conviction relief from convictions obtained in violation of the Constitution or the laws of the United States or the constitution or laws of Colorado. *Robbins v. People*, 107 P.3d 384, 387 (Colo.2005). Thus, motions that challenge the validity of a defendant's plea or the manner in which it was taken are properly brought under Crim.P. 35(c). *Peo-*

---

**2.** Specifically, we granted certiorari on the following issue:

> Whether a post-conviction challenge to the factual basis for a guilty plea constitutes a challenge to an illegal sentence under Crim.P. 35(a) that can be raised at any time.

While the issue we granted certiorari on asks whether Rockwell's claim was properly characterized as a Crim.P. 35(a) or a Crim.P. 35(c) motion, the parties sought the resolution of the larger issue of whether Rockwell's sentence to mandatory parole was actually illegal. That determination requires this court to explain the meaning of the term "factual basis" within the

context of section 17–2–201(5)(a). The court of appeals resolved Rockwell's direct appeal on its understanding of that term. The parties also briefed and argued that issue before this court. We find that the meaning of the phrase "factual basis" is pivotal to a complete resolution of the issues at hand and we therefore address it.

**3.** For convenience, we refer to the current statutory compilation unless otherwise indicated. When the current statutory compilation is inapplicable or has changed in significant respect, we refer to the statutes in effect when Rockwell was sentenced.

*ple v. Green,* 36 P.3d 125, 127 (Colo.App. 2001). Accordingly, Crim.P. 35(c) motions address questions of the procedure used when accepting a guilty plea. Section 16–5–402(1)(a), C.R.S. (2005), imposes time limitations in which defendants must bring Crim.P. 35(c) motions.

### B.

While Rockwell categorizes his claim as a Crim.P. 35(a) motion challenging the imposition of an illegal sentence to mandatory parole, the People allege Rockwell makes a related, but procedurally distinct Crim.P. 35(c) motion contesting the factual basis for his guilty plea. The People claim Rockwell is challenging the factual basis for his conviction to second-degree burglary with the intent to harass and instead maintains that the facts support a conviction for second-degree burglary with the intent to commit a sexual assault. The People argue that the appropriate remedy for this claim is the withdrawal of the guilty plea. Crim.P. 35(c) motions properly address claims of inadequate factual basis to support a guilty plea. *See generally People v. Schneider,* 25 P.3d 755, 758 (Colo. 2001) (finding 35(c) motion appropriate for a request to withdraw guilty plea upon discovery of new evidence). Without a factual basis, a guilty plea cannot stand. *People v. Alvarez,* 181 Colo. 213, 217, 508 P.2d 1267, 1270 (1973). Because Rockwell's claim is properly brought under Crim.P. 35(c), the People argue Rockwell's motion is time barred pursuant to section 16–5–402(1)(a).

The People, however, misinterpret Rockwell's argument. Rockwell is not challenging the factual basis supporting his guilty plea to second-degree burglary with the intent to harass. On the contrary, Rockwell contends the factual basis for his guilty plea also includes unlawful sexual behavior and supports a second-degree burglary with the intent to commit a sexual assault conviction, and he wishes to be sentenced accordingly. Rockwell claims that the factual basis of his conviction requires the trial court to impose a

---

4. For a complete history of the mandatory and discretionary parole schemes, see *Martin,* 27 P.3d at 849–51 and *People v. Cooper,* 27 P.3d 348, 352–54 (Colo.2001).

---

sentence pursuant to the discretionary parole provision of section 17–2–201(5)(a).

To better understand Rockwell's argument, we explain the sex offender and non-sex offender sentencing schemes. In *Martin,* 27 P.3d at 863, this court held that the legislature created two systems of parole for felonious offenders convicted of crimes occurring between 1993 and 1996.[4] The legislature provided that most felonious offenders receive a sentence to incarceration plus an additional period of mandatory parole. *Id.* Sex offenders, however, receive a sentence to incarceration with the parole board having the exclusive authority to grant parole within that sentence. *Norton,* 63 P.3d at 347. Persons convicted of offenses involving unlawful sexual behavior whose crimes were committed on or after July 1, 1996, but before July 1, 2002, are also subject to the discretionary parole provisions. § 17–2–201(5)(a.5), C.R.S. (2005); *People v. Cooper,* 27 P.3d 348, 356 (Colo.2001).

The primary sentencing scheme requires that individuals convicted of crimes not involving unlawful sexual behavior receive mandatory parole pursuant to sections 17–22.5–403(7), C.R.S. (2005), and 18–1–105(1)(a)(V), C.R.S. (1999).[5] *Martin,* 27 P.3d at 863. In the mandatory parole system, a felonious offender is released upon the completion of his sentence or when the parole board determines he is ready for parole. § 17–22–403(7)(a); *Martin,* 27 P.3d at 858. Upon release, the felon receives a mandatory period of parole statutorily prescribed by the legislature. § 18–1–105(1)(a)(V). If a felon subject to mandatory parole violates the terms of his parole, that felon faces an additional period of confinement. *Martin,* 27 P.3d at 858.

In the discretionary parole system, the trial court sentences the defendant to a period of incarceration and the parole board has the exclusive discretion to release an offender from prison before the completion of his sentence. *Norton,* 63 P.3d at 347. If a sex offender is released from prison, his parole

---

5. Section 18–1–105(1)(a)(V) is now codified in section 18–1.3–401(1)(a)(V)(A), C.R.S. (2005).

term is set by the parole board for a length of time up to the remainder of the unserved portion of his sentence or five years, whichever period is less. § 17–2–201(5)(a); *Martin*, 27 P.3d at 860. If a felon subject to discretionary parole breaches the terms of his parole, he could be forced to serve the remainder of the original term. *Id.* at 858. This term may not exceed the length of the original sentence. *Id.*

The legislature determined that certain offenders engaged in sexually-related crimes should be eligible for discretionary parole before the completion of their sentences to incarceration. *Id.* Section 17–2–201(a)(5) allows the Board to grant discretionary parole for individuals who are (1) convicted of an offense involving unlawful sexual behavior as defined in section 16–22–102(9), C.R.S. (2005), or (2) convicted of an offense for "which the factual basis involved an offense involving unlawful sexual behavior" for crimes committed prior to July 1, 1996.[6] § 17–2–201(5)(a); *see Martin*, 27 P.3d at 863.

As an offender who committed a crime between July 1, 1993 and July 1, 1996, Rockwell is subject to either the mandatory or discretionary parole provisions depending upon the factual basis for his offense, rather than on the nature of his conviction. He alleges he was illegally sentenced to mandatory parole. The trial court would lack the authority to sentence Rockwell to mandatory parole if the underlying "factual basis" for his charge involved unlawful sexual behavior. § 17–2–201(5)(a). Whether a sentence to incarceration with the possibility of discretionary parole was required in this case depends

entirely upon whether there was a factual basis for unlawful sexual behavior.

A sentence to mandatory parole when the offender should receive a sentence with the possibility of discretionary parole is inconsistent with the statutory scheme outlined by the legislature. Rockwell claims his sentence under the mandatory parole provisions instead of the discretionary parole provisions is contrary to the statutory scheme and beyond the trial court's authority. His claim is properly brought under Crim.P. 35(a) because he claims his sentence is illegal.[7] We do not address the People's argument that Rockwell's claim is time barred because we conclude that Rockwell brings a Crim.P. 35(a) motion.

### III. Determining a Factual Basis

■ Having decided that Rockwell's motion to correct an illegal sentence was properly brought under Crim.P. 35(a), we next consider whether Rockwell was appropriately sentenced to mandatory parole. Felonious offenders are legally sentenced under the discretionary parole provisions if they are convicted of (1) a sexual offense or (2) a crime with an underlying "factual basis" of unlawful sexual behavior. § 17–2–201(a)(5). Second-degree burglary with intent to harass is not an unlawful sexual behavior crime. § 16–22–109. Thus, whether incarceration with the possibility of discretionary parole is a lawful sentence depends on whether Rockwell's crime included a "factual basis of unlawful sexual behavior." § 17–2–201(a)(5). Applying this line of reasoning, the court of appeals remanded Rockwell's case for fur-

---

6. At the time of Rockwell's sentencing in 2000, the legislature discussed crimes of "unlawful sexual behavior" in section 18–3–401 to section 18–3–405.5, et seq. They included sexual assault in the first degree, section 18–3–402, C.R.S. (1999); sexual assault in the second degree, section 18–3–403, C.R.S. (1999); sexual assault in the third degree, section 18–3–404, C.R.S. (1999); sexual assault on a child, section 18–3–405, C.R.S. (1999); sexual assault on a child by one in a position of trust, section 18–3–405.3, C.R.S. (1999); and sexual assault on a client by a psychotherapist, section 18–3–405.5, C.R.S. (1999) as sexual assault crimes. The legislature currently defines "unlawful sexual behavior" in section 16–22–102(9), C.R.S. (2005), to includes a larger number of offenses and the criminal at-

tempt, conspiracy, or solicitation to commit those crimes.

7. We have sometimes resolved cases raising Crim.P. 35(c) issues by addressing illegal sentencing. In *Craig v. People*, 986 P.2d 951 (Colo. 1999), the defendant alleged the imposition of mandatory parole violated his plea agreement, rendering his guilty plea involuntary. In *Martin*, 27 P.3d 846, the defendant originally challenged the validity of his advisement in relation to mandatory parole. While we resolved both cases by addressing the legality of the sentences imposed, both claims were properly brought under Crim.P. 35(c) because they challenged the procedure used to obtain the defendant's conviction.

ther findings on whether a factual basis existed from the record as a whole, including the original charges, the requirement that he obtain offense specific treatment, the defendant's statements, the prosecution's statements, and the presentence report. *Rockwell*, 104 P.3d at 903. We must decide the meaning of the term "factual basis" within Colorado's sentencing scheme to determine whether Rockwell should have received a sentence to incarceration with mandatory parole or with the possibility of discretionary parole.

### A.

The People argue that the phrase "factual basis" has a particular meaning in the context of Crim.P. 11 and that the legislature understood that meaning. Specifically, under Crim.P. 11, a factual basis can be established during the providency hearing by sufficient evidence from which a trial judge may fairly conclude whether a defendant can be convicted if he or she chooses to stand trial. The People argue that a factual basis can only be established by evidence on the record when Rockwell pled guilty to second-degree burglary with the intent to harass. In this case, only the elements of second-degree burglary with the intent to harass were on the record at the providency hearing. Rockwell contends, however, the factual basis of a crime includes the record as a whole. Rockwell points to the original charges, the requirement that he complete offense specific treatment, and the presentence report to establish a factual basis of unlawful sexual behavior.

■ When interpreting the meaning of a statutory term, our goal is to effectuate the intent of the General Assembly. *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1190 (Colo.1996); *Lakeview Assoc. v. Maes*, 907 P.2d 580, 584 (Colo.1995). By necessity, we initially examine the plain language for direction. *Lopez*, 916 P.2d at 1190. The court may further rely on other guideposts to discern the intended meaning when the statutory language is ambiguous or if the term appears to conflict with other statutory provisions. *Cooper*, 27 P.3d at 354. Traditional guideposts include the legislative history, prior law, consequences of a given interpretation, agency interpretations, and the overall end the legislature intended to achieve. *Id.;* § 2–4–203, C.R.S. (2005); *Schubert v. People*, 698 P.2d 788, 793–94 (Colo.1985).

■ If the statutory language has a clear meaning, our task is to construe the provision in accordance with the commonly accepted technical or particular meaning of the words. § 2–4–101, C.R.S. (2005); *Reg'l Transp. Dist. v. Voss*, 890 P.2d 663, 667 (Colo.1995). We generally presume that the legislature is aware of the previously expressed legal importance of the words and phrases it uses. *People v. Guenther*, 740 P.2d 971, 976 (Colo.1987); *Martin*, 27 P.3d at 855.

### B.

■ Our precedent has established a clear meaning of the term "factual basis." A factual basis for unlawful sexual behavior can be established by (1) statements made by the defendant, (2) facts or fact-finding stipulated to by the defendant, or (3) facts found by the jury.[8] We agree with the People's argument that a factual basis is supported by sufficient evidence offered at the providency hearing. From this evidence, a trial judge must be able to fairly conclude that a defendant could be convicted of the crime pled to, if the defendant elected to stand trial. ABA Standards for Criminal Justice 14–1.6, cmt. (1986).

First, our precedent has supported factual basis determinations on various types of admissions by the defendant. Traditionally, this discussion has occurred in the context of the providency hearings.[9] We have upheld a

---

8. Of course, a defendant may waive the establishment of a factual basis. Crim.P. 11(b)(6); *People v. Fleming*, 781 P.2d 1384, 1388 (Colo.1989). A waiver occurs when the defendant excuses the establishment of a factual basis for the specific charge after a full explanation of the basis for the

plea agreement. *People v. Carino*, 193 Colo. 412, 414, 566 P.2d 1061, 1063 (1977).

9. Crim.P. 11 requires the trial court to determine whether a sufficient factual basis exists for a guilty plea before accepting it, unless the finding

factual basis determination when the defendant admitted to the date, time, and elements of the crime. *People v. Fleming,* 781 P.2d 1384, 1388 (Colo.1989). Similarly, we held that a factual basis existed when the defendant admitted to "that with which you are charged." *People v. Cushon,* 650 P.2d 527, 528 (Colo.1982). We have also ruled that admissions by the defendant during questioning by the trial judge related to criminal conduct support a factual basis determination. *People v. Carino,* 193 Colo. 412, 414, 566 P.2d 1061, 1062 (Colo.1977). Thus, we have repeatedly upheld factual basis determinations on admissions by the defendant. *Fleming,* 781 P.2d at 1388–89; *Cushon,* 650 P.2d at 528; *Carino,* 193 Colo. at 414, 566 P.2d at 1062.

Second, we have approved factual basis determinations stipulated to by the defendant. In *Wilson v. People,* 708 P.2d 792, 798–99 (Colo.1985), we upheld a factual basis determination that rested upon the affidavits of two psychiatrists who examined the defendant. The defendant waived his right to an evidentiary hearing and did not contest the trial court's reliance on the affidavits. *Id.* at 795. Thus, the factual basis in *Wilson* stemmed from outside sources stipulated to by the defendant. *Id.* at 798–99. Similarly, in *Wright v. People,* 690 P.2d 1257, 1262 (Colo.1984), this court relied on the defendant's stipulation that the probation report could be used to establish a factual basis for his plea when considering whether the defendant understood the nature of the charges against him. The factual basis in both *Wilson* and *Wright* stemmed from outside sources stipulated to by the defendant. *Wilson,* 708 P.2d at 798–99; *Wright,* 690 P.2d at 1262. Thus, we have repeatedly upheld factual basis determinations when the defendant stipulated to facts or factual findings made by the judge or another reliable source.[10]

Third, this court and the court of appeals have upheld factual determinations based on jury findings. Recently, the court of appeals

upheld a factual basis determination in the context of section 17–2–201(5)(a.5) upon findings made by a jury. *People v. Pahlavan,* 83 P.3d 1138, 1143 (Colo.App.2003), *cert. denied,* 2004 WL 296954 (Colo.2004). In *Pahlavan,* the defendant was convicted by a jury of second-degree kidnapping. That same jury made specific factual findings that the defendant's kidnapping offense included a sexual assault. *Id.* After receiving a mandatory parole term, the defendant contested his sentence and sought the possibility of discretionary parole. The court of appeals relied on the special jury finding that the defendant engaged in a sexual assault to hold that the underlying factual basis for the defendant's offense included unlawful sexual behavior. *Id.* Sexual assault is one of the offenses listed in the definition of unlawful sexual behavior. § 16–22–102(9). We approve of the court of appeals' reasoning that a jury finding can support a factual basis of unlawful sexual behavior.

■ As the name implies, the "factual basis" consists of those facts which establish that an offense has been committed. A factual basis can be properly determined by (1) facts admitted to by the defendant, (2) facts or fact-finding stipulated to by the defendant, or (3) facts found by a jury. Generally, these facts sustain elements of the offense and, therefore, support a conviction. However, these facts may go beyond what is necessary to establish an element of the offense. The factual basis is the conduct of the defendant that makes him guilty of a crime as determined by a court from the facts admitted, stipulated, or found by a jury.

### C.

We need not inquire into the legislative history or other tools of statutory construction if the language of the statute is clear and unambiguous. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35

---

of a factual basis is waived. *People v. Fleming,* 781 P.2d 1384, 1388 (Colo.1989).

**10.** · In *People v. Canino,* 181 Colo. 207, 508 P.2d 1273 (1973), we used sweeping language that could be misread to suggest that a probation report could always support the factual basis of a

plea. However, we also mentioned that the defendant in *Canino* agreed at the providency hearing to the use of the probation report to support the offense. *Id.* at 210, 508 P.2d 1273. We read *Canino* as consistent with this opinion.

(Colo.2000). We do so here only to show that the legislative history does not contradict our interpretation of "factual basis".

 Statements made before a legislative committee are not conclusive proof of legislative intent. *Martin,* 27 P.3d at 853 n. 6. They do, however, provide guidance in interpreting the statute. *Id.* (citing *Hyland Hills Park & Recreation Dist. v. Denver & R.G.W.R.R.,* 864 P.2d 569, 574 n. 7 (Colo. 1993) (statements of individual legislators made during committee hearings indicate legislative intent)). While less persuasive than a statement of a legislator during debate, testimony before a congressional committee helps illustrate the understanding of legislators and, thus, helps identify the legislative intent.

In 1996, the House Judiciary Committee and the Senate Judiciary Committee discussed the phrase "any offender convicted of an offense ... for which the factual basis involved an offense involving unlawful sexual behavior" in some detail. Chief Deputy District Attorney Laura Dunbar explained the phrase to the House Judiciary Committee. She indicated that individuals who pled guilty to non-sexual offenses might qualify as sexual offenders if an underlying sexual factual basis existed. Ms. Dunbar, however, never explained how a factual basis should be formulated. She stated that the phrase:

> includes as offense[s] which have as their factual basis a sexual offense, but what may happen in the course of the criminal case is they get plea bargained to a non-sexual related offenses. For example, ... where there is a burglary, an entry into someone's home without their consent, [and] it's charged as a second-degree burglary ... [and] often times an attempted sexual assault or a sexual assault that may occur ... [T]here might be some evidence problems around one of the crimes but not the other, sometimes those offenses are pled to non-sexual offenses, such as just second-degree burglary, but they involve ... sexual offenses and so the intent of ... the proposed changes ... would be when there is still a factual basis underlying a

crime, concerning a sexual assault, that those crimes as well should be crimes where the offender[s] need to register as sex offenders since they are sex offenders with that factual basis.

*Hearing on H.B. 96–1181, Before the H. Judiciary Comm., 60th Gen. Assem., 2d Sess.* (Feb. 1, 1996) (discussing the term in context of which offenders needed to get genetic testing as a condition of their probation). While Ms. Dunbar did state that individuals who pled guilty to a non-sexual offense might qualify as sex offenders if the underlying factual basis so suggested, she did not explain how the factual basis should be determined.

Similarly, testimony before the Senate Judiciary Committee did not indicate a clear legislative intent for how a factual basis should be formed. Director of the Colorado District Attorney Counsel Ray Slaughter explained that the phrase "takes care of *Alford* pleas." *Alford* pleas arise out of the United States Supreme Court's decision in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In that case, the United States Supreme Court held that a defendant could plead guilty even if he protested his innocence, if that plea comported with Constitutional requirements and was supported by a factual basis. *Id.* at 31, 91 S.Ct. 160; *see People v. Darlington,* 105 P.3d 230, 233 (Colo.2005); *People v. Birdsong,* 958 P.2d 1124, 1127 (Colo.1998). By entering an *Alford* plea, the defendant merely consents to the imposition of a conviction and a sentence while maintaining his or her innocence. *Birdsong,* 958 P.2d at 1127. Mr. Slaughter's comments imply that, at least in reference to *Alford* pleas, the defendant's actions, and not the plea alone, can support an underlying factual basis of a sexual offense. Mr. Slaughter did not state how such a factual basis could be found.

Neither of these comments illustrate that the legislature intended that the "factual basis" determination for section 17–2–201(5)(a) differ in any respect from our prior case law.[11] In the complete absence of contrary

---

11. We are aware that the Department of Corrections constructs "factual basis" for the purposes

of DNA testing in a manner potentially contrary to the plain meaning of the statute. The regula-

legislative intent, we presume that the legislature knew of our previously expressed understanding of specific language and intended to effectuate that meaning. *Martin*, 27 P.3d at 855.

### D.

As we have explained, an offender is lawfully sentenced to incarceration with the possibility of discretionary parole if he committed a sexual offense or a crime with a "factual basis" of unlawful sexual behavior. § 17–2–201(5)(a). To establish a factual basis the trial judge must be able to fairly conclude that the defendant could be convicted of a crime involving unlawful sexual behavior under section 16–22–102(9) if he elected to stand trial from (1) statements made by the defendant, (2) facts or fact-finding stipulated to by the defendant, or (3) facts found by the jury. In this case, Rockwell was illegally sentenced to mandatory parole if a factual basis of unlawful sexual behavior existed.

### IV. Application

We now turn to whether the "factual basis" of Rockwell's crime "involved an offense involving unlawful sexual behavior." The People claim Rockwell received a legal sentence because nothing in the record at the time of his 1994 guilty plea supports a sentence under the discretionary parole provisions. Specifically, they argue that the parties did not assert any facts, and the trial court did not make any factual findings which would establish that Rockwell committed a crime involving unlawful sexual behavior. The court of appeals disagreed and remanded the case to the trial court to review the original charges, the requirement that Rockwell obtain offense specific treatment, statements made by the defendant, statements

made by the prosecution, and the presentence report. Within the court of appeals' framework, Rockwell alleges that the original charges, the requirement that he complete offense specific treatment, and the presentence report establish a factual basis of unlawful sexual behavior. We will address each of Rockwell's arguments in turn.

The People originally charged Rockwell with second-degree burglary with the intent to commit a sexual assault and third-degree sexual assault. Rockwell did not admit to those charges. On the contrary, Rockwell specifically chose not to plead guilty to second-degree burglary with the intent to commit a sexual assault. He instead pled to second-degree burglary with the intent to harass. Simply bringing charges against a defendant does not establish a factual basis for those offenses without a guilty plea or jury verdict. Indeed, it is fundamentally unfair to use charges against a defendant when he does not have the opportunity to contest them. In this case, neither the second-degree burglary with the intent to commit a sexual assault nor the third-degree sexual assault were admitted to by Rockwell or found by a jury. Without an admission or a jury verdict, the original charges against Rockwell cannot establish a factual basis of unlawful sexual behavior.

A factual basis of unlawful sexual behavior also cannot lie in the trial court's order requiring Rockwell to obtain "offense specific treatment if required by the probation department." The trial court had the authority to order Rockwell to obtain offense specific treatment regardless of whether he was a sex offender. The trial court has broad discretion when imposing the conditions of a deferred judgment or probation to "insure that the defendant will lead a law-abiding life

---

tions broadly define "factual basis" to "[r]efer to the actual conduct of the offender during the crime." The regulations look to "the Presentence Investigation Report (PSIR) or [the] police report for a description of the offender's actual conduct during the crime" to formulate "factual basis." Dept. of Corrs. Admin. Reg. 700–19, art. IV(A) (2005). While an agency's interpretation of a statute is entitled to deference, our court is not bound by an agency interpretation that is contrary to the plain meaning of a statute or

contrary to legislative intent. *Barnes v. Dept. of Revenue, Motor Vehicle Div.*, 23 P.3d 1235, 1236 (Colo.App.2000). While our prior case precedent requires the trial judge to look to the actual conduct of the offender, see *People v. Leske*, 957 P.2d 1030, 1044 (Colo.1998), our precedent further requires that the use of PSIRs or police reports be stipulated to by the defendant. *Wilson*, 708 P.2d at 798–99; *Wright*, 690 P.2d at 1262.

and to assist the defendant in doing so." § 16–11–204(1), C.R.S. (1994)[12]; *see People v. Blizzard,* 852 P.2d 418, 419 (Colo.1993). The ability to order offense specific treatment is included within the trial court's broad discretion. § 16–7–403(2), C.R.S. (1994)[13]; § 16–11–204(2)(a)(II), C.R.S. (1994).[14] Furthermore, while the record does not indicate that the trial court sentenced Rockwell specifically to sex offender treatment[15], such a sentence would not establish Rockwell was entitled to be subject to the discretionary parole provisions. The mere fact that a sentence is imposed by a trial court does not establish a factual basis for that sentence. It puts the cart before the horse to argue that the imposition of a sex offender sentence proves that the conviction is supported by a factual basis for unlawful sexual behavior. An appropriate factual basis must be established before the trial court sentences a defendant under either the mandatory or discretionary parole provisions; otherwise, a sentence may be unlawful or a conviction may be subject to a successful challenge. Without appropriate evidence supporting the conviction, the requirement that Rockwell obtain offense specific treatment does not establish a "factual basis" as required by section 17–2–201(5)(a).

The presentence report also cannot sustain a factual basis for unlawful sexual behavior. Generally, a presentence report cannot establish a factual basis for an offense because it does not necessarily reflect facts admitted, stipulated, or found by a jury. Only when the defendant requests or stipulates to the core presentence report's use to establish the elements of the charge, can it support a factual basis determination. *See Wilson,* 708 P.2d at 798–99. Nothing in this case suggests that Rockwell requested or stipulated to the use of the presentence report at the time of his providency hearing.

After a review of the record, we find nothing to suggest that Rockwell stipulated to facts found by an external source. Without any evidentiary stipulations, we can only look to admissions by the defendant to establish a factual basis of unlawful sexual behavior. In this case, the only admission by the defendant at the time of the providency hearing was the elements of the offense as contained in the amended information. Rockwell admitted the elements of the offense by pleading guilty to the explanation of the offense as provided by the prosecution in the information. *People v. Nguyen,* 899 P.2d 352, 357 (Colo.App.1995). The elements, as admitted to by the defendant, established: (1) the time and place of the crime, (2) that Rockwell committed the crime, (3) that Rockwell unlawfully entered the dwelling of the victim, (4) that Rockwell broke into the dwelling with the intent to commit the crime of harassment, and (5) the crime of harassment requires intentional harassing, annoying, or alarming another person by "striking, shoving, kicking, or otherwise touching." §§ 18–4–203, 18–9–111, C.R.S. (2005). Nothing in the elements of second-degree burglary with intent to harass establishes an act of unlawful sexual behavior.[16]

12. Section 16–11–204(1) is now codified in section 18–1.3–204(1), C.R.S. (2005).

13. Section 16–7–403(2) is now codified in section 18–1.3–102(2), C.R.S. (2005).

14. Section 16–11–204(2)(a)(II) is now codified in section 18–1.3–204(2)(a)(II), C.R.S. (2005).

15. Rockwell erroneously argues that he was sentenced as a sex offender to sex offender treatment pursuant to section 16–11.7–105, C.R.S. (2005). We can find nothing on the record to indicate that he was sentenced pursuant to that provision. Regardless, section 16–11.7–105 specifically applies to "sex offender[s] sentenced by the court for ... offense[s] committed on or after January 1, 1994." The second-degree burglary committed by Rockwell occurred on September 9, 1993, which was prior to the applicability date of this section. Furthermore, section 16–11.7–105 requires treatment for sex offenders, but the terms of Rockwell's probation only required him to obtain "offense specific treatment if ordered by the probation department." Because section 16–11.7–105 does not apply to Rockwell, we reject this argument.

16. In oral argument, Rockwell's attorney noted a computer entry in the registry of actions concerning the charged offense entitled "converted description." He questioned whether this entry implied that the trial court had amended the charge. "Converted description" indicates an event in the court's computer case management system marking the conversion of data entered in a predecessor program to different data fields maintained in the successor program. This change in the manner in which data is catego-

The record below does not include any admissions by the defendant, facts or fact-finding stipulated to by the defendant, or a jury verdict which formulates a factual basis of unlawful sexual behavior. Without any supporting evidence, no factual basis of unlawful sexual behavior exists in this case. The trial court, therefore, legally sentenced Rockwell to mandatory parole.

## V. Conclusion

We reverse the judgment of the court of appeals and remand with directions to affirm the order denying Rockwell's motion to correct an illegal sentence.

Justice COATS concurring in the judgment only, and Justice KOURLIS joins in the concurrence.

Justice COATS, concurring in the judgment only.

I concur in the majority's judgment reversing the holding of the court of appeals. Because I do not agree, however, that the defendant's claim is properly characterized as a motion to correct an illegal sentence, and therefore that it may be brought pursuant to Crim. P. 35(a), I would find it unnecessary to reach the merits of the claim. Furthermore, even if I considered it necessary to reach the merits, as the majority does, I believe the matter is easily resolved by reference to the applicable statutes themselves, without broadly defining the term "factual basis" for all purposes.

Although I wholeheartedly agree that the defendant pled guilty neither to "an offense involving unlawful sexual behavior" nor to an offense "for which the factual basis involved an offense involving unlawful sexual behavior," section 17–2–201(5)(a), C.R.S. (2005), I write separately to explain why I believe the majority's treatment of Crim. P. 35(a) and its exegesis of the term "factual basis" should be viewed with caution outside the narrow (and highly unusual) context of a criminal defendant seeking to be classified as a sex offender, which is actually before the court today.

rized by the computer program and expressed in the registry is not a court order and does not

Unlike the majority, I consider it clear that the defendant's claim challenges the validity of his conviction for burglary (with the intent to harass), rather than the legality of his sentence for that conviction. *See* maj. op. at 416. The trial court found a factual basis for that offense, entered judgment for that offense, and imposed a sentence mandated by the legislature for that offense. The defendant does not assert the illegality of the sentence imposed for the offense for which his plea was accepted; he asserts that the record supports the entry of a plea to (what in effect is) a different offense altogether.

Because the trial court never found a factual basis for unlawful sexual behavior and never accepted a plea based on such behavior, the defendant's challenge to the factual basis for his offense only secondarily implicates the legality of his sentence. Even according to the defendant's theory, his sentence is illegal only to the extent that the court erred in failing to find and enter judgment on (what the defendant considers to be) mitigation for his crime of burglary. Such a claim does not challenge the legality of a sentence within the contemplation of Crim. P. 35(a). Were Crim. P. 35(a) to extend so far, virtually any challenge to a defendant's conviction could be couched in terms of its secondary effect on his sentence, obliterating any distinction between Crim. P. 35(a) and Crim. P. 35(c), and the separate purposes and limitations of each.

Permitting such claims to be brought as challenges to the authority, or jurisdiction, of the sentencing court, without time limitation of any kind, is particularly problematic in the context of sex offender sentencing. In *Martin v. People*, 27 P.3d 846 (Colo.2001), we held in effect that when the general assembly changed the sentencing scheme in 1993 to mandate that felony sentences include a period of parole supervision extending up to five years beyond the term of incarceration imposed by the court, it intended to exempt sex offenders, despite expressly naming them and singling them out for the longest possible period of "mandatory parole." Since that

imply any change in the charged offense.

time, classifying an offense as one of the sex offenses described by section 17–2–201(5) has had particular significance for parole consequences. It is often, however, unclear whether the parole consequences of section 17–2–201(5) will be advantageous or disadvantageous for a particular defendant until after (and sometimes well after) he has been sentenced.

Although the majority refers to the two-track parole system as including "mandatory" and "discretionary" parole, maj. op. at 415–416, no system of parole mandating release when an inmate becomes eligible for parole has existed in this jurisdiction for decades. Under the current regime, once a defendant becomes statutorily eligible for parole, it is within the discretion of the parole board to grant or deny release, and generally to set the conditions of his parole, regardless of the track in which a defendant's conviction places him. Although the length of parole for felony offenses other than those governed by section 17–2–205(5) is ostensibly mandated by statute, even that time period can be shortened in the discretion of the board. *See* § 18–1.3–401(1)(a)(V)(B), C.R.S. (2005). The real difference between the two tracks or systems of parole resides in the fact that the "mandatory" period of parole, required by section 18–1.3–401, may be imposed, whether or not that amount of time remains unserved on the defendant's court-imposed sentence to incarceration.

Therefore whether a defendant's offense is treated by section 17–2–201(5) as a sex offense or not, he becomes eligible for parole according to the same considerations, and the parole board has the same discretion to grant or deny parole. Because a sex offender could be kept under parole supervision for as long as five years, pursuant to section 17–2–201(5), while the statutorily prescribed period of parole for non-sex offenses could be as low as one year, a sex offender may actually be subjected to a longer period of parole than if he were convicted for an offense not involving unlawful sexual behavior. However, because a sex offender cannot be held on parole for any longer than the period remaining on his sentence to incarceration, the advantageousness of one parole track as opposed to the other, for any particular defendant, will likely turn on the length of the defendant's original sentence, as well as his assessment of the likelihood that he will be released on parole sooner (rather than later) during the service of his sentence, and the likelihood that the parole board will decide to keep him under supervision for a shorter (rather than a longer) period of time.

Because any defendant pleading to a crime involving (or having a factual basis involving) unlawful sexual behavior will almost certainly be required to register as a sex offender upon release from custody, he will remain subject to a form of supervision, even after being released from parole. His considerations in seeking (or avoiding) classification as a sex offender will therefore be complex and likely to change, long after his plea has been entered. Once it becomes clear to a defendant that he is unlikely to be granted parole, whether or not he has already been rejected; or once the unserved remainder of his sentence to incarceration becomes small, relative to the mandatory parole for his level of felony, the advantages of being classified as a sex offender are likely to rise in his calculations. It is clear to me that Crim. P. 35(a) was not intended to permit defendants to seek classification as a sex offender based on the particular facts of their crimes, once it becomes advantageous for their particular situation.

The defendant in this case first moved for correction of an illegal sentence after serving more than two years of a six year sentence and some six years after entering his bargained-for plea. By statute, he could easily have become eligible for parole by that time. *See* §§ 17–22.5–403 and 405, C.R.S. (2005). For the reasons I have already articulated, I believe his claim raises a challenge to the validity of his conviction rather than the legality of his sentence. Even if he were able to couch his claim in terms otherwise permitting a motion for post-conviction relief pursuant to Crim. P. 35(c), I would find his challenge to his six-year-old plea time-barred. *See People v. McPherson,* 53 P.3d 679, 681–82 (Colo.App.2001); *People v. Cummins,* 37 P.3d 507, 509 (Colo.App.2001).

If, like the majority, I considered it necessary to reach the merits of the defendant's claim, I would find it clear from the context that the legislature used the term "factual basis" in reference to the factual basis required in this jurisdiction prior to the acceptance of a guilty plea. In 1996, the legislature expanded the class of sexually-related offenses governed by section 17–2–201(5)(a), changing the description from "a sex offense, as defined in section 16–13–202(5), C.R.S. [The Colorado Sex Offenders Act of 1968]" to "an offense involving unlawful sexual behavior or for which the factual basis involved an offense involving unlawful sexual behavior, as defined in section 18–3–412.5(1), C.R.S. [Sex offenders—duty to register—penalties]." This disjunctive construction, lifted in its entirety from the registration statute, included any offense "for which the factual basis involved an offense involving unlawful sexual behavior," in addition to any offense "involving" unlawful sexual behavior. Consequently, it is plainly unnecessary for the majority to expansively define "factual basis" to include elements or sentencing factors found by a trier of fact because they are already included as offenses "involving" unlawful sexual behavior. *See* maj. op. at 418. Rather, it seems manifest that the disjoined clause, referencing offenses "for which the factual basis involved an offense involving unlawful sexual behavior," was clearly added specifically to encompass guilty pleas for which no such finding existed, but for which a factual basis sufficient to accept the plea did.

Were this language and history insufficient in itself, the general assembly has now, with the 2002 reorganization of the registration statutes (cross-referenced in the 2002 amendment to section 17–2–201(5)(a), C.R.S. (2005)), specified the persons who will be "deemed to be convicted of an offense, the underlying factual basis of which involves unlawful sexual behavior...." *See* § 16–22–103(2)(c), C.R.S. (2005). While the more recent provisions alter somewhat the formula for offenses requiring registration, and by their own terms limit their applicability to convictions entered after July 2002, I believe they clarify the legislature's intent with respect to the inclusion of offenses not themselves enumerated as unlawful sexual behavior. Since 2002, the statute expressly prohibits a person from being deemed to have been convicted of an offense the underlying factual basis of which involves unlawful sexual behavior, unless the judgment of conviction specifies that the person is convicted of such an offense and specifies the particular crime of unlawful sexual behavior involved. *See* § 16–22–103(2)(c)(IV).

Were I to reach the merits, I would therefore find, from the statutes themselves and without reference to case law developed in other contexts and for other purposes, that a defendant has pled guilty to a sex offense, for both parole and registration purposes, only if the offense to which he pled was itself an offense of unlawful sexual behavior or if the court found, and the defendant accepted, that the offense to which he pled included a factual basis involving unlawful sexual behavior. Because, however, I consider it clear that the defendant's claim alleges a failure to sentence him for the offense he alleges that he actually committed, rather than a failure to legally sentence him for the offense to which he pled guilty, I would hold that his claim was not properly raised as a motion to correct an illegal sentence, pursuant to Crim. P. 35(a).

I therefore concur only in the judgment of the majority. I am authorized to state that JUSTICE KOURLIS joins in this concurrence.